ODOM, Justice.
 

 The Standard Oil Company manufactures and puts on the market an oil called “Standard Tractor Fuel,” a product closely resembling kerosene. The state, on the relation of the supervisor of public accounts, brought two suits against the defendant to collect a tax of one cent per gallon on certain quantities of this product, the state’s contention being that the tax is due under Act No. 228 of 1926, as amended by Act No. 15 of 1932. In one of the suits it was alleged that defendant owed' the state $69.83, and in the other that it owed $38.68. The trial court rejected the state’s demands in both cases, and it' appealed. The two cases are consolidated here.
 

 Act No. 228 of 1926, § 7, as amended by Act No. 15 of 1932, § 3, levies a tax of one cent per gallon “on all kerosene sold, used, or consumed in the State of Louisiana for domestic consumption,” the proceeds of the tax to be turned over to the state board of health and used by it for purposes stated in the act.
 

 Section 7 of the act, as amended, defines “kerosene” as follows: “The term Kerosene as mentioned in this Act is what is ordinarily known as Kerosene, or such oils of like quality used for same purposes.”
 

 The state’s contention is that the product called “Standard Tractor Fuel” is kerosene as defined by the act, and that it was called tractor fuel for the purpose of evading the tax. The defendant denied liability on two grounds: First, because the act is unconstitutional; and, second, because the commodity sought to be taxed is not kerosene as defined by the act.
 

 We find it unnecessary to pass upon the constitutionality of the act, because on 'the merits the defendant is not liable for the tax.
 

 It is made perfectly clear by the testimony of the chemists, both those called for the state and the two called by the defendant, that the distillate called “Standard Tractor Fuel” contains practically the same chemical properties as ordinary kerosene. The two oils have practically the same dis-
 
 *195
 
 dilation range, “A. P. I.” gravity, and the same flash point. The chemical tests of the two products are practically the same. The chemists called by the state said that the tractor fuel is kerosene.
 

 But the testimony makes it equally as clear that this tractor fuel is not what is prdinarily called kerosene, because it does not come up to the standard required by law for approved kerosene-sold in this state, and is not and cannot be successfully used for the same purposes. Each is a petroleum product produced by the distillation and purification of petroleum, but kerosene is a more highly refined product than this so-called tractor fuel, and is put on the market and ordinarily used for different purposes. Dr. Shivers, a chemist, and Dr. Mechlin, director of laboratories for the supervisor of public accounts, each called by the state, said that this tractor fuel did not meet the tests required for standard Louisiana kerosene. Dr. Mechlin said he burned it in a lamp for sixteen hours, and added: . “It is not satisfactory as a Louisiana approved kerosene, as defined by Act No. 14 of 1932.” He said that when burned in a lamp it clogged the wick and smoked the chimney. He was asked whether the sample of the tractor fuel which he tested would burn as satisfactorily in cook and heating stoves and in lamps as kerosene coming within the specifications for approved Louisiana kerosene, and he answered: “I can only answer for its behavior in lamps. It does not burn sufficiently well to be classed as Louisiana approved kerosene.” Dr. Shivers said that the product ordinarily known as kerosene is referred to in the petroleum industry as a “burning oil” and: “The term ‘burning oil’ is usually understood to mean an oil used for illuminating purposes in the petroleum industry.” He said further that it was his understanding that consumers of kerosene ordinarily used it for illuminating purposes and in stoves.
 

 Dr. Clay, another chemist called by the state, was asked: “For what purpose is kerosene generally used?” He answered: “As an illuminating oil and as a burning oil for use in stoves, as a motor fuel and, I believe to quite an extent, in the manufacture of insect spray, insecticide.”
 

 Dr. Chopin was asked: “For what purposes are kerosenes used?” And he said: “As an illuminating fuel in lamps, as a fuel for stoves and internal combustion motors.” When asked if the sample of the tractor fuel analyzed by him was usable for those purposes, he replied, “I believe it is.” He did not seem to be quite certain.
 

 Mr. Brignac, called by the defendant, has been inspector of petroleum products for the Standard Oil Company for seventeen years. His duties are to make tests of petroleum products and report to the chief chemist. He testified that he had made tests of this so-called tractor fuel and that it did not meet the requirements for kerosene. He made a lamp or burning test and stated, as did Dr. Mechlin and others, that it was unsatisfactory; that at the end of eight hours there was excessive smoke, “wickers,” or what he termed “toad-stools or mushrooms on the wick,” or “crust,” and that the wick was choked. He said that the lamp started smoking two hours after it was lighted and that at the end of eight
 
 *197
 
 hours the smoke was excessive. Mr. Amis is a chemist and has been employed by the defendant company for fourteen years, the last three years as chief chemist and prior to that as assistant to the chief chemist. He testified that this tractor fuel could not be classed or marketed as ordinary kerosene and did not meet the tests or specifications set up for approved kerosene. To quote, he said: “It does not meet either for approved kerosene for sale in. the State of Louisiana, nor does it meet the specifications set up by the Federal Specification Board for the purchase of kerosene by the various branches of the United States Government,” and, “The carbonaceous materials which would be indicated by the flock test would tend to clog the wick and cause an incrustation on the wick.”
 

 Act No. 14 of 1932, approved by the Governor the same day as Act No. 15 of the same session, is an act to “Regulate the sale of petroleum products,” section 1 of which provides that:
 

 “The phrase ‘illuminating oil’ shall include coal oil, kerosene or other petroleum products used for illuminating purposes.”
 

 This definition, as well as the testimony of the witnesses, shows that what is ordinarily termed “kerosene” is used primarily for illuminating purposes.
 

 The testimony shows that the oil sought to be taxed under Act No. 228 of 1926, as amended by Act No. 15 of 1932, is manufactured and put on the market to be used exclusively as a motor fuel and that it is in fact used for that purpose exclusively by those who purchase it.
 

 Counsel for the state admit that this so-called “Standard Tractor Fuel” is not sold as an illuminating fuel, for they say in their brief at page 10: “However, we would remind the court that we are not contending that this fuel was sold as an illuminating oil, but we are contending that it is kerosene and that it will burn in lamps.”
 

 In State v. Nola Oil Company, Inc., 184 La. 849, 167 So. 751, 753, decided Monday, March 30, 1936, the state was seeking to tax the liquid product known as “Stoddard Solvent” or “mineral spirits” as a motor fuel, the product being manufactured and used primarily for cleaning clothes. The basis of the state’s contention was that the product fell within the technical definition of “motor fuel,” as defined by law, and was therefore taxable as a motor fuel. In that case we said:
 

 “It is our opinion that the defendant has successfully shown that the liquid or product known as ‘Stoddard solvent’ or ‘mineral spirits’ is not gasoline or motor fuel, because, while it falls within the technical definition of ‘motor fuel’ as defined by the Legislature and is capable of operating a motor, under experimental circumstances, it is not a motor fuel in fact or within the contemplation of the provisions of the Constitution and the statutes.”
 

 Paraphrasing the language used by us in that case, we say here that it is our opinion that the testimony shows that the liquid or product known as “Standard Tractor Fuel” is not kerosene, as defined by Act No. 228 of 1926, as amended by Act No. 15 of 1932, because, while it falls within the
 
 *199
 
 technical definition of kerosene and will burn in lamps under experimental circumstances, it is not kerosene in fact or within the contemplation of the provisions of the said act, which defines kerosene as “what is ordinarily known as Kerosene, or such oils of like quality used for same purposes.”
 

 For the reasons assigned the judgment appealed from is affirmed.
 

 O’NIELL, C. J., absent.