175 So. 59

**STATE v. LOUISIANA OIL REFINING CORPORATION.**

No. 33796.

May 24, 1937.

See, also, 160 So. 290, 181 La. 659.

Gaston L. Porterie, Atty. Gen., and Justin C. Daspit, F. A. Blanche, and E. L. Richardson, Sp. Assts. to the Atty. Gen., for the State.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellee.

ROGERS, Justice.

The State of Louisiana brought this suit to recover from the Louisiana Oil Refining Corporation the sum of $17,603.22 allegedly due as taxes and penalties for the sale of 1,324,792 gallons of a product marketed by the defendant as tractor fuel, distillate, and furnace oil from September 1, 1932 to March 8, 1933. The demand of the State is predicated on its contention that the product in question was in fact kerosene as defined by Act No. 228 of 1926 as amended by

Act No. 15 of 1932, and was therefore subject to the tax of one cent a gallon imposed by the statute.

Answering the suit, defendant denied that the product sought to be taxed fell within the statutory definition of kerosene. Defendant also pleaded that the statute itself was unconstitutional.

The court below overruled the plea of unconstitutionality, but rejected plaintiff's demand, after a trial on the merits. Plaintiff appealed.

The only question presented for determination by this court is whether the petroleum product forming the basis of this suit is taxable under the statute, defendant having abandoned its contention that the statute is unconstitutional.

According to the record, the defendant is engaged in the business of refining crude petroleum, and during the period extending from September 1, 1932, to September 30, 1933, operated a refinery at Gas Center, in Caddo parish, at which the product sought to be taxed was manufactured and refined. Defendant's refinery was of the character known in the industry as a "topping plant," in which the products of crude petroleum are recovered through a process of fractionation, and consisted mechanically of a series of stills and condensers in which the several products of crude oil were recovered through the application of heat of various degrees of temperature.

In the process of refining the crude oil was placed in a still and there subjected to a degree of heat sufficient to cause the lighter ends or the most volatile components of the crude to vaporize and pass in the form of gas into a fractionating tower and condenser where the gas was condensed into liquid form, constituting gasoline and the so-called light naphthas.

The residue of the crude after the extraction of this material was run into another still where it was subjected to a higher degree of temperature sufficient to cause a further vaporization of gases, which, when condensed, formed the products known to the industry as kerosene distillate and the heavier naphthas, which products are generally referred to as the second "cut" of the crude. By similar process and the application of successively higher degrees of temperature there was recovered a gas oil product, the third "cut," a lubricating product, the fourth "cut," and the residual product fuel oil.

The raw product referred to as kerosene distillate, or the second "cut" obtained from the crude contains sulphur and asphaltene compounds and other acids resulting from the nature of the crude or accumulated in the process of refining. This is the product which was marketed by the defendant as tractor fuel, distillate, and furnace oil. This raw product when chemically treated with sulphuric acid "doctor solution" washed with water and caustic soda, whereby the objectionable elements are removed, becomes a product suitable for use as illuminating or burning oil, and is the product which is marketed by those engaged in the petroleum industry as kerosene. Each is a petroleum product, but kerosene is a more highly refined product than the distillate, and is put on the market and ordinarily used for different purposes.

During the period involved in this case, the defendant manufactured and marketed as kerosene 1,500,200 gallons of the chemically treated or finished product, upon which defendant paid the one cent a gallon kerosene tax levied by the statute, amounting to $15,002. During the same period the defendant sold and marketed 1,324,792 gallons of the raw or unfinished product on which the tax is claimed in this suit, under designations such as distillate and tractor fuel intended primarily for use in farm tractors.

The sales involved in this case were made prior to the adoption of Act No. 15 of the First Extra Session of 1934. Under that statute, the sale of products of the character of those involved here, with the exception of tractor fuel for farm use, which is exempted, would undoubtedly be subject to taxation. But kerosene as defined in Act No. 228 of 1926 did not embrace many petroleum products, the sale of which is now expressly subject to taxation under Act No. 15 of the First Extra Session of 1934. Act No. 15 of 1932 amending Act No. 228 of 1926 made no change in the definition of kerosene as set forth in section 7 of the amended statute. The definition of "kerosene" contained in both statutes is as follows, viz.: "The term Kerosene as mentioned in this Act is what is ordinarily known as Kerosene, or such oils of like quality used for same purposes."

Defendant contends that under the definition of the statutes of 1926 and 1932 only the product commonly known as kerosene was subject to the tax, and that kerosene as the term is commonly understood is primarily a burning or illuminating oil, for which purpose the raw or unfinished distillate cannot be satisfactorily used, and, consequently, the sale of that product could not be taxed.

On the other hand, the State contends that, although the raw or unfinished product may not be a satisfactory burning or illuminating oil, since in technical analysis it has the same basic qualities and can be used for many purposes for which kerosene is susceptible of use, it is in the same generic class, and its sale was, consequently, subject to the tax.

We are satisfied from our examination of the evidence in the record that the product sought to be taxed in this case is of the same class and character as was the product sought to be taxed in the case of State ex rel. Grosjean v. Standard Oil Company, 185 La. 192, 168 So. 772. The product involved here like the product involved in that case, while within the technical definition of kerosene, was not what is commonly understood to be kerosene. It did not come up to the legal standard required for kerosene sold in this State. It was neither called nor sold as kerosene nor could it be used successfully for the same purposes.

We think the decision in the Standard Oil Company Case is controlling of the issues involved in this case. There it was held that the product involved, though technically known as kerosene, was not commonly known as such; and that it was not kerosene in fact and was not within the statutory provision which defines kerosene as "what is ordinarily known as Kerosene, or such oils of like quality used for same purposes."

If the statute invoked by the State was inapplicable to the petroleum product involved in the Standard Oil Company Case, and the court so held, it is likewise inapplicable to the petroleum product involved in this case.

For the reasons assigned, the judgment appealed from is affirmed.