HIGGINS, Justice.
The state of Louisiana, through the Supervisor of Public Accounts and the Attorney General, brought this summary proceeding against the Nola Oil Company, Inc., for the collection of a tax and an inspection fee claimed respectively under the provisions of Act No. 6 of the Extra Session of the Legislature of 1928, as amended by Act No. 8 of 1930, Act No. 16 of 1932, Act No. 34 of 1934, and under section 16 of Act No. 14 of 1932.
The petition alleges that the Nola Oil Company, Inc., is a dealer in gasoline and motor fuels; that it had imported into the state for distribution, sale, or use therein 7,970 gallons of a volatile gas-generating liquid having a flash point below 110 degrees F., constituting motor fuel under the provisions of the statutes; that the product was stored in a local tank, and that although the product was taxable, the defendant had neither paid the tax due nor furnished bond to guarantee the payment thereof. The state prayed for an attachment of the product and that it be sold in due course, to satisfy its claim amounting to $411.48 and costs, and that an order issue prohibiting the defendant from further pursuit of its business, until satisfaction of the judgment.
The defendant answered, denying that the product or “Stoddard solvent” was imported for distribution, sale, or use as a motor fuel. It also denied that the liquid was a “motor fuel” under the article of the Constitution and enabling statutes, or in fact, and that it was a dealer within the meaning of the statutes. The defendant admitted the importation of a carload of the solvent, averring that it was bought for sale and distribution to tailor, pressing and cleaning shops and laundries for cleaning clothes. Defendant also challenged the right of the Legislature to include such a product in a definition of “motor fuel” because of the alleged constitutional limitation.
*752 There was judgment in favor of the defendant, dismissing the suit, the trial judge assigning the following reasons:
“Now, my own opinion is that the Legislature of Louisiana, by the language it used in defining motor fuel, never had any idea or intention of imposing a tax upon anything else except motor fuel. I, therefore, hold that it was not the intention of the legislature to impose this tax upon this product, mineral spirits, which was not in truth and fact a motor fuel, used as a motor fuel or ever intended to be used as a motor fuel, and for that reason the case is with the defendant. But, if it be held that it was the intention of the legislature to impose this tax upon anything else than motor fuel by its definition, then the Act is unconstitutional because its title does not indicate it.”
The state appealed.
While this case was pending, we had occasion, in State v. Louisiana Oil Refining Corporation, 181 La. 659, 160 So. 290, to pass upon the identical constitutional question presented here as to the alleged defective title of the act, and we held Act No. 6 of the Extra Session of 1928 and Act No. 16 of 1932 constitutional.
The state’s evidence shows that a sample of the “Stoddard solvent” was taken in the customary way and sent to the laboratory for analysis. Mr. F. J. Mechlin, a chemist, testified, as an expert for the state, to the effect that this product is known in the trade as “Stoddard solvent” or “mineral spirits”; that it is also referred to as “fractionated naphtha” ;■ that'the product is known as a light petroleum fraction and includes the fractions which are also included in motor gasoline; that it is a volatile gas generating liquid having a. flash point below 110 degrees F.; that ordinary gas motors, such as thos.e which propel automobiles, can be run with this liquid, provided a heating apparatus is connected to the motor and that the carburetor be changed and properly adjusted; that an automobile propelled by this fluid with these mechanical changes would have a noisy motor and an uneven or jumpy flow of power; that he had never seen any one purchase this liquid for the purpose of generating motor power, except in experiments in the laboratory; that it would only justify an automobile owner making mechanical changes on his car to use this liquid if the price thereof was substantially below that of gasoline; and that the initial boiling point of the product was 310 degrees, whereas gasoline is between 131 and 172 degrees, depending upon the quality of the gasoline.
Jos. Gallo, president of the defendant company, testified that in the five years that he sold the product he had imported approximately 500,000 gallons of it, and that it was always sold for the purpose of cleaning clothes; that it was sold and delivered to laundries and cleaning and pressing shops, but had never been sold to any one for the purpose of using it as motor fuel; and that it was not practical to use it for that purpose in the usual gas motors.
Mr. Aaron Abramson, chemist, testified as an expert for the defendant. His testimony is in accord with that of the state’s expert as to the result of the test showing a flash point below 110 degrees F., and that the liquid would not operate the usual gas or automobilé motor without heating the liquid and changing the carburetor and the manifold of the motor; that he had only seen mineral spirits used as a motor fuel in experiments, but his experience showed that it was not practical as motor fuel because it caused knocking in the motor, sluggish and slow starting, and a lack of pick-up or performance and uniform flow of power by the motor; and that he would not classify this product as motor fuel. He further stated that turpentine, ether, alcohol, benzine, etc., had a flash point below 110 degrees F. and were Capable of operating a motor, but that it was not practical to use these liquids as motor fuel under mechanical and scientific conditions as they exist today.
The state contends that it,has shown that this substance not only falls within the definition of “motor fuel” as fixed by the Legislature under its constitutional authorization, but has also proved that the liquid is, in fact, capable of being used as a motor fuel.
The defendant argues that, while the liquid has a flash point of less than 110 degrees F., it is not, in fact or in law, a motor fuel, even though it is capable of operating a motor specially equipped to utilize it as a fuel, because it is not practicable to do so and is used solely and only as a cleaning fluid.
Paragraph (a) of section 22 of article 6 of the Constitution of 1921 (as amended [see Act No. 219 of 1928])' authorized the Legislature to define motor fuel. The pertinent part thereof reads as follows:
“On gasoline, benzine, naphtha and other motor fuels, as defined by law, when sold, used or consumed in the State of Louisiana, *753 there shall be levied a tax not to exceed four cents (4$) per gallon, to be collected as prescribed by law.” (Italics ours.)
Under section 1 of Act No. 6 of 1928, Extra Session, a 4 cents per gallon tax on all gasoline and motor fuel was levied. The term “motor fuel” is defined as “all volatile gas-generating liquids having a flash point below 110 degrees F., commonly used to propel motor vehicles or motors.”
Section 1 of Act No. 16 of 1932 amended section 1 of Act No. 6 of 1928, Extra Session, by eliminating from the definition of motor fuel the words “commonly used to propel motor vehicles or motors.”
The purpose of this amendment was to give the state greater security in the collection of the tax by relieving the state of the burden of proving that the liquid was commonly used to propel motor vehicles or motors and shifting to the dealer against whom the claim for the tax was made the burden of showing that the product in question was not motor fuel.
In the case of State v. Armbruster, 174 La. 914, 142 So. 125, 126, where we held that furnace oil did not come within the definition of “motor fuel” under the act of 1928, we said:
“If the words, ‘commonly used to propel motor vehicles or motors,’ be stricken from the statute and the constitutional provision, the tax would apply, according to the testimony in the record, to each gallon of alcohol manufactured in the state, to all crude oil as it comes from the wells, to ether, chloroform, kerosene, and innumerable liquids having naphtha or benzine for a base which are used for cleansing purposes, and to a number of paint and varnish solvents. We feel quite certain that it was not the intention of their framers that the legislative and constitutional provisions in question should have such a far-reaching effect.” (Italics ours.)
In State v. Cedar Grove Refining Co., 178 La. 810, 152 So. 531, 533, we heid that paragraph (a) of section 22 of article 6 of the Constitution of 1921 (as amended [see Act No. 219 of 1928]) authorized the Legislature to define motor fuels, and that tractor distillate was a motor fuel, stating:
“Manifestly, the very purpose of the expression ‘as defined by law’ was to leave it to the LegislaUtre to define motor fuel, •and to change the definition as the Legislature might see fit to change it, within reasonable bounds. * * *
“The argument that this interpretation of the act of 1932 makes the text broader than the title is founded upon the fset that the title refers to levying the tax ‘on all gasoline or motor fuel,’ etc. It is contended that a volatile gas-generating liquid having a flash point below 110 degrees F. is not a motor fuel unless it is ’commonly used to propel motor vehicles or motors.’ But that is a begging of the question, because the definition itself declares that the term ‘motor fuel’ means all volatile gas-generating liquids having a flash point below 110 degrees F. That definition does not go beyond the indication, in the title of the act, that it is an act to levy a tax upon ‘motor fuel.’-” (Italics ours.)
We do not believe that it was the intention of the Legislature, in eliminating the words .“commonly used to propel motor vehicles or motors,” to broaden the statute so as to cover all volatile gas-generating liquids having a flash point below 110 degrees F., whether or not such liquids were usable or capable of being used in a practical way for motor fuel. For instance, ether technically falls within the definition and is capable of being used as a motor fuel, but no one would seriously contend that it is subj ect to 4 cents motor fuel tax, when we know that under existing conditions it is not practical to use it as motor fuel. But, if through mechanical changes or scientific developments this liquid would become a practical motor fuel, then it would come within the Legislative definition and would be subject to the tax. The same result would logically follow as to mineral spirits or any other kind of liquid.
It is our opinion that the defendant has, successfully, shown that the liquid or prodüct known as “Stoddard solvent” or “mineral spirits” is not gasoline or motor fuel, because, while it falls within the technical definition of “motor fuel” as defined by the Legislature and is capable of operating a motor under experimental circumstances, it is not a motor fuel in fact or within the contemplation of' the provisions of the Constitution and the statutes.
For the reasons assigned, the judgment appealed from is affirmed.
O’NIELL, C. J., absent.