880 So.2d 1 (2004)
OCEAN ENERGY, INC.
v.
PLAQUEMINES PARISH GOVERNMENT.
No. 2004-C-0066.
Supreme Court of Louisiana.
July 6, 2004.
Rehearing Denied September 3, 2004.
*3 Onebane Law Firm, Lawrence L. Lewis, III, Lafayette, for applicant.
Johnette L. Martin, Houma, for respondent.
KIMBALL, Justice.
The issue presented by this case is whether the prohibition found in La. Const. art. VII, § 4(C) against political subdivisions levying a tax on motor fuel applies to off-road diesel fuel purchased by a corporation and used primarily in the operation of the internal combustion engines *4 of its marine vessels that were used to transport supplies and personnel and to service its offshore drilling and production facilities on the outer continental shelf of the Gulf of Mexico. For the reasons that follow, we conclude that the technical definition of "motor fuel" as provided in La. R.S. 47:712(1) cannot be used to interpret the term "motor fuel" as used in Article VII, § 4(C) of the constitution. We further conclude that a more general definition, and one that comports with the intent of the framers and the voting population as a whole, should be used to interpret the constitutional provision at issue. Therefore, after thoroughly weighing all relevant principles, laws, policies, and arguments, we find that the off-road diesel fuel purchased by the corporation for use in the operation of the internal combustion engines of its marine vessels is included in the term "motor fuel" as used in La. Const. art. VII, § 4(C). Consequently, we find the local taxing authority involved in this suit is without the power to levy a tax on the off-road diesel fuel at issue.

Facts and Procedural History
Plaquemines Parish Government (hereinafter "PPG") is a political subdivision of the State of Louisiana and the governing authority of the Parish of Plaquemines. As the collector of local sales and use taxes levied by various local political subdivisions within the parish, PPG, through its Sales Tax Division, conducted an audit of Ocean Energy, Inc. (hereinafter "OEI") for the taxable period of July 1, 1995 through June 30, 1998. The audit revealed that OEI failed to pay sales and use taxes on its consumption of off-road, or "dyed," diesel fuel during the period at issue. The diesel fuel at issue was primarily used by OEI to operate the internal combustion engines of its marine vessels, which were used to transport supplies and personnel and to service its offshore drilling and production facilities on the outer continental shelf of the Gulf of Mexico.
By a letter dated May 24, 2000, OEI was assessed delinquent sales and use taxes, interest, and penalty in the amount of $268,275.51for the period July 1, 1995 through June 30, 1998.[1] On June 8, 2000, OEI paid the amount assessed under protest and informed PPG of its intent to file suit for the recovery of the taxes, interest, and penalty paid, along with interest as provided by law from the date of payment.
On June 28, 2000, OEI filed a Petition for Refund of Sales/Use Taxes Paid Under Protest in the district court. On February 28, 2002, OEI filed a motion for summary judgment on the grounds that the assessment at issue is barred by La. Const. art. II, § 4(C), which prohibits a political subdivision of the state from levying a tax on motor fuel. In response, PPG filed a cross-motion for summary judgment alleging that there are no applicable constitutional or statutory prohibitions against PPG levying and collecting sales and use taxes on off-road diesel fuel during the tax period at issue.
Following a hearing, the district court denied the motion for summary judgment filed by OEI, and granted the cross-motion for summary judgment filed by PPG. The district court dismissed OEI's petition in its entirety at OEI's costs. The district court's reasons for judgment consisted solely of the following paragraph:
This Court agrees with the position of the Plaquemines Parish Government in this matter that there is no constitutional *5 prohibition against the collection of a tax by the Government against sales transactions which include diesel fuel. Such a tax is not a tax on motor fuel such as is prohibited.
After the rendition of the district court's judgment, OEI filed a devolutive appeal. The court of appeal affirmed the district court's judgment denying OEI's motion for summary judgment and granting PPG's cross-motion for summary judgment. Ocean Energy, Inc. v. Plaquemines Parish Gov't., 03-0805 (La.App. 4 Cir. 12/10/03), 863 So.2d 618. In reaching this decision, the court of appeal determined that the diesel fuel at issue was not "motor fuel" as that term is used in La. Const. art. VII, § 4(C) and that OEI's purchase and consumption of the off-road diesel fuel was subject PPG's sales and use tax ordinance. The court of appeal found that although the constitution does not define the term "motor fuel," the phrase is not ambiguous as the definition of "motor fuel" found in La. R.S. 47:712 can be used to supplement La. Const. art. VII, § 4(C). Because the off-road diesel fuel used by OEI does not meet the statutory definition of "motor fuel" provided by La. R.S. 47:712(1), the court of appeal concluded that the assessed tax was not prohibited. Additionally, the court of appeal concluded that the term "motor fuel" has held virtually the same meaning since the 1920s and that the term was never intended to include the diesel fuel at issue. Finally, the court of appeal determined that the right of PPG to levy a tax on off-road diesel fuel pursuant to La. Const. art. VI, § 29, which provides that the governing authority of a local government subdivision may levy and collect a tax upon the sale at retail, the use or the consumption of tangible personal property, is consistent with other constitutional provisions that expressly mention diesel fuel. Consequently, the court of appeal found that the provisions of La. Const. art. VII, § 4(C) do not prohibit PPG from levying a tax on the diesel fuel at issue.
We granted certiorari to consider the correctness of the court of appeal's interpretation of the term "motor fuel" as used in La. Const. art. VII, § 4(C). Ocean Energy, Inc. v. Plaquemines Parish Gov't., 04-0066 (La.3/26/04), 871 So.2d 331.

Discussion
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). The summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action...." La. C.C.P. art. 966(A)(2).
This court's review of a grant or denial of a motion for summary judgment is de novo. Jones v. Estate of Santiago, 03-1424, p. 5 (La.4/14/04), 870 So.2d 1002, 1006. Thus, we ask the same questions as the district court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Id; Robinson v. Heard, 01-1697, pp. 3-4 (La.2/26/02), 809 So.2d 943, 945.
In the instant case, the sole issue presented for our review is whether PPG is prohibited by La. Const. art. VII, § 4(C) from levying sales and use taxes on off-road diesel purchased by OEI and used primarily to operate the internal combustion engines of its marine vessels, which were used to transport supplies and personnel and to service its offshore drilling and production facilities on the outer continental shelf of the Gulf of Mexico.
*6 OEI contends that the court of appeal erred in using the definition of "motor fuel" provided in La. R.S. 47:712(1) to interpret that term in the constitutional prohibition found in La. Const. art. VII, § 4(C). Additionally, OEI asserts that the court of appeal's decision misinterprets and misapplies the legislative history of the constitutional prohibition. OEI argues that because the generally prevailing meaning of the term "motor fuel" as used in La. Const. art. VII, § 4(C) clearly includes diesel fuel that is used to power the internal combustion engine of a marine vessel, its motion for summary judgment should be granted.
PPG, on the other hand, argues that the term "motor fuel" has been defined by the legislature since the 1920's and has never included off-road diesel fuel. Consequently, PPG asserts that the off-road diesel fuel at issue is not "motor fuel" as that term is used in La. Const. art. VII, § 4(C), and it is therefore not prohibited from levying sales and use taxes on the fuel. Furthermore, PPG contends that La. Const. art. VII, § 27, which created the Transportation Trust Fund effective January 1, 1990, specifically exempts diesel fuel from state sales tax and any sales tax levied by a political subdivision, but only if the purchase is subject to excise tax under Chapter 7 of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950. Because the off-road diesel fuel at issue is not subject to the referenced excise tax, PPG contends that it is not provided an exemption from state and local government sales tax. Finally, PPG argues that the legislative history of La. Const. art. VII, § 4(C) does not support a conclusion that the term "motor fuel" includes off-road diesel fuel.
The state's power to tax is unlimited except as restricted by constitutional provisions. Radiofone, Inc. v. City of New Orleans, 93-0962, p. 2 (La.1/14/94), 630 So.2d 694, 696. In contrast, local governmental subdivisions have only the power to tax that has been granted to them by the state constitution or the statutes. Id. The governing authority of any local governmental subdivision is granted the authority to levy and collect a tax upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption of tangible personal property by La. Const. art. VI, § 29. However, pursuant to La. Const. art. VII, § 4(C), a political subdivision is not granted the power to levy a tax on motor fuel.[2] On November 16, 1977, PPG adopted Ordinance No. 174, levying within the Parish of Plaquemines a tax of one per cent upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption of tangible personal property pursuant to La. Const. art. VI, § 29. The ordinance defines "tangible personal property" to "mean and include personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses." While off-road diesel fuel may be included in the definition of "tangible personal property" as provided in the ordinance, *7 PPG has no power to tax the fuel if it is "motor fuel" within the meaning of La. Const. art. VII, § 4(C).
The starting point in the interpretation of constitutional provisions is the language of the constitution itself. East Baton Rouge Sch. Bd. v. Foster, 02-2799, p. 15 (La.6/6/03), 851 So.2d 985, 996. When a constitutional provision is plain and unambiguous and its application does not lead to absurd consequences, its language must be given effect. Id. Unequivocal constitutional provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. Cajun Elec. Power Co-op. v. Louisiana Pub. Serv. Com'n, 544 So.2d 362, 363 (La.1989) (on rehearing).
When the constitutional language is subject to more than one reasonable interpretation, it is necessary to determine the intent of the provision. East Baton Rouge Parish Sch. Bd., 02-2799 at pp. 15-16, 851 So.2d at 996. In seeking to ascertain constitutional intent, the same general rules used in interpreting laws and written instruments are followed. East Baton Rouge Parish Sch. Bd., 02-2799 at p. 16, 851 So.2d at 996. When construing an ambiguous constitutional provision, a court should ascertain and give effect to the intent of both the framers of the provision and of the people who adopted it; however, in the case of an apparent conflict, it is the intent of the voting population that controls. Id.
In construing a constitutional provision, the courts may consider the object sought to be accomplished by its adoption, and the evils sought to be prevented or remedied, in light of the history of the times and the conditions and circumstances under which the provision was framed. Succession of Lauga, 624 So.2d 1156, 1160 (La.1993). Additionally, if one constitutional provision addresses a subject in general terms, and another addresses the same subject with more detail, the two provisions should be harmonized if possible, but if there is any conflict, the latter will prevail. Perschall v. State, 96-0322 p. 22 (La.7/1/97), 697 So.2d 240, 255. However, where the language of a constitutional prohibition makes its aim evident and unequivocal, courts need not consider the historical basis for the prohibition and may not, by separately considering related constitutional provisions, arrive at a construction that detracts from the effectiveness or manifest meaning and purpose of the related provisions. Perschall, 96-0322 at p. 22, 697 So.2d at 256.
In Caddo-Shreveport Sales & Use Tax Com'n v. Office of Motor Vehicles, 97-2233 (La.4/14/98), 710 So.2d 776, this court had the task of interpreting the constitution's specific delegation to local governments of the right to levy and collect sales and use taxes. After stating the general rules of constitutional interpretation, the court stated, "In order to ascertain the ordinary, usual, and commonly understood meaning of a word not otherwise defined in a constitution, courts generally look first to the dictionary definition." Caddo-Shreveport Sales & Use Tax Com'n, 97-2233 at p. 7, 710 So.2d at 776, 780 (citing 16 Am.Jur.2d Constitutional Law § 71 (1998)). The court then turned to the common dictionary meaning of the term "collect" to find the "layman's understanding" of the word. Id. After finding a reasonable and common meaning, the court concluded that because the constitution expressly grants the power to collect local taxes to local government, it implicitly prohibits the legislature from appointing a state agency to collect local taxes absent consent of the local tax collector.
In City of New Orleans v. Scramuzza, 507 So.2d 215 (La.1987), a case cited by *8 both parties, this court interpreted the term "income tax" as used in La. Const. art. VII, § 4(C), the same constitutional provision at issue in this case. The issue involved whether the New Orleans Earnings Tax Ordinance, which imposed a tax of 1.5% on annual gross earnings in excess of $5000 on every person working in the City of New Orleans, was unconstitutional under La. Const. art. VII, § 4(C). In interpreting the meaning of "income tax" within the factual context presented, the court stated, "The words and terms expressed in the Constitution are to be interpreted by the court with an understanding of the definitions which would have been given to those words or terms by the people when they adopted the Constitution." Id. at 217. The court determined that giving a precise definition of an income tax would prove to be a near impossible task and that any definition must necessarily vary to conform to the different systems of income taxation. Id. at 218. The court then cited a general explanation of our state income tax found in a statute, a definition of the term "income tax" from Black's Law Dictionary, and a definition from the U.S.Code.
After examining these different definitions, the court stated, "Fortunately, our task is not to define `income tax,' but merely to determine if the Earnings Tax should be classified as a prohibited form of `income tax' under our Constitution." Id. Thus, without actually defining the word, the court found that income tax, as demonstrated by the different definitions, may be understood both technically and in more general terms. Id. The court reiterated the presumption of constitutional interpretation in favor of the natural and popular meanings in which words are usually understood by the people who adopt them. Id. The court found that it would be difficult to believe that the majority of the voting population believed that a tax on their earnings is not an income tax. Id.
The court went on to state that an income tax in the most generally understood terms is a tax on income. Because the ordinance at issue defined "earnings" as "total wages, commissions, earnings, tips, and/or salaries of an employee," the court found that for the vast majority of taxpayers, the Earnings Tax would be imposed on their major source of income. Id. Therefore, the court found, the ordinance was prohibited by the constitution. To interpret the provision so narrowly as to allow the City to levy the tax would defeat the obvious constitutional purpose to prohibit local income taxes. Id.
The court went on to state that it had "determined the constitution affords no definitional guidance, nor is there relevant statutory material lending clarification to the term `income tax.'" Id. at 219. The court concluded again that the people, in adopting the constitution, did not understand the term in a technical sense and, because there was no ambiguity when using the general and popular meaning of the words, the intent of its redactors was not a proper consideration.
Article VII, section 4 of the 1974 Constitution, entitled "Income Tax; Severance Tax; Political Subdivisions," provides in subsection (C):
(C) Political Subdivisions; Prohibitions. A political subdivision of the state shall not levy a severance tax, income tax, inheritance tax, or tax on motor fuel.
With the foregoing principles of interpretation in mind, we turn to the question of whether the prohibition against a political subdivision levying a "tax on motor fuel" prevents PPG from levying a sales and use tax on the off-road diesel purchased by OEI and used primarily to operate the internal combustion engines of its marine vessels.
*9 Our constitution does not otherwise define the term "motor fuel." PPG contends that in the absence of a constitutional definition, this court should look to the definition provided by La. R.S. 47:712(1), which is contained in the Title relating to Revenue and Taxation and the Chapter dealing with Taxes on Petroleum Products.
In pertinent part, La. R.S. 47:712 provides:
As used in this Part, unless the context indicates otherwise:
(1) "Motor fuel" means all volatile gas generating liquids having a flash point below 110 degrees F.
The parties agree that the off-road diesel fuel purchased by OEI has a flash point above 110 degrees F., and is therefore not a "motor fuel" as used in Part I of Chapter 7 of Subtitle II of Title 47 relating to Gasoline Taxes.
Article 6, § 22(a) of the 1921 Constitution, as amended pursuant to Act No. 219 of 1928, authorized the legislature to define the term "motor fuels" as follows:
On gasoline, benzine, naphtha and other motor fuels, as defined by law, when sold, used or consumed in the State of Louisiana, there shall be levied a tax not to exceed four cents (4c) per gallon, to be collected as prescribed by law.
At that time, the prevailing statute levying the tax on motor fuel was Act No. 142 of 1924, which defined "motor fuel" as "all volatile gas-generating liquids having a flash point below 110 degrees F., commonly used to propel motor vehicles." Subsequently, Act No. 6 of the 1928 Extra Session was enacted
To provide revenues for the public highways of the State of Louisiana by levying a tax of four cents per gallon on all gasoline or motor fuel sold, used or consumed in the State of Louisiana for domestic consumption, as authorized by paragraph A, Section 22, Article VI, of the Constitution of Louisiana, of 1921, as amended, defining motor fuel....
The term "motor fuel" was re-defined by the Act to add "or motors" to the end of the definition, so that it read that "motor fuel" was defined as "all volatile gas-generating liquids having a flash point below 110 degrees F., commonly used to propel motor vehicles or motors." The definition was later amended by Act No. 16 of 1932 to eliminate the words "commonly used to propel motor vehicles or motors." Thus, the definition read, as it does today in La. R.S. 47:712(1), that "motor fuel" means "all volatile gas-generating liquids having a flash point below 110 degrees F." This amendment was enacted
to give the state greater security in the collection of the tax by relieving the state of the burden of proving that the liquid was commonly used to propel motor vehicles or motors and shifting to the dealer against whom the claim for the tax was made the burden of showing that the product in question was not motor fuel.
State v. Nola Oil Co., 184 La. 849, 855-56, 167 So. 751, 753 (1936).
PPG asserts that because the term "motor fuel" had an established statutory definition at the time the 1974 Constitution was adopted, this definition should be used to interpret the constitutional prohibition found in La. Const. art. VII, § 4(C). After considering the history of the constitutional prohibition at issue, the statutory definitions of "motor fuel," and the general principles of constitutional interpretation, we conclude that the definition of "motor fuel" provided by La. R.S. 47:712(1) should not be used to interpret the constitutional prohibition against political subdivisions levying a tax on motor fuel found in La. Const. art. VII, § 4(C).
*10 The constitutional authority given to the legislature by Article VI, § 22(a) of the 1921 Constitution to define the term "motor fuels" for purposes of taxation was not carried over into the 1974 Constitution. The provisions of Article VI, § 22(a) of the 1921 Constitution that directed the legislature to define "motor fuels" were deleted by the Committee on Revenue and Finance during the 1973 constitutional convention. See Records of the Louisiana Constitutional Convention of 1973: Committee Documents and User Guides, Vol. XIV-B, p. 1547. In the absence of an express constitutional directive in La. Const. art. VII, § 4(C) that the legislature define the term "motor fuel," or a reference to the pre-existing legislative definition, we do not believe that we are constrained to use the definition provided by La. R.S. 47:712(1) to interpret a constitutional provision.
Perhaps more importantly than the absence of a constitutional directive to the legislature to define the term "motor fuel" is the fact that several statutory definitions of "motor fuel" exist. In addition to the definition provided by La. R.S. 47:712(1), the term "motor fuel" is also defined by La. R.S. 47:451, La. R.S. 40:1842, and La. R.S. 30:2194. In a Chapter relating to the Vehicle Registration License Tax, La. R.S. 47:451 provides that "motor fuel," as used in that Chapter, "means every kind and character of fuel used in the operation of a motor vehicle and embraces every such fuel contemplated by Chapter 7 of this Sub-title." In a Part dealing with the Louisiana Liquefied Petroleum Gas Commission, La. R.S. 40:1842 states that, as used in that Part, "`motor fuel' means liquefied petroleum gases of a type distributed for use as a fuel in self-propelled agricultural or industrial equipment, and vehicles designed for use on public streets, roads, and highways." In a Chapter dealing with Hazardous Waste Control Law, La. R.S. 30:2194 provides that as used in La. R.S. 30:2194 through 2195.10, "`motor fuels' shall be defined as all grades of gasoline including but not limited to gasohol, No. 1 diesel, No. 2 diesel, kerosene, and all aviation fuels."
Notably, each definition of "motor fuel," including that found in La. R.S. 47:712(1), is limited by its own terms to a particular set of statutes. PPG acknowledges that several statutory definitions of "motor fuel" exist, but argues that the definition found in La. R.S. 47:712(1) should be used to interpret La. Const. art. VII, § 4(C) because it is contained in a Part dealing specifically with gasoline taxes. However, because we find no constitutional intent to utilize a statutory definition of "motor fuel," because we find the definition provided by La. R.S. 47:712(1) is limited by its own terms to references to "motor fuel" in Part I of Chapter 7 of Subtitle II of Title 47, and because there are several distinct statutory definitions of the term "motor fuel" that could conceivably be used to interpret the prohibition in La. Const. art. VII, § 4(C), we find this argument is without merit.
Moreover, in accordance with the general principles of constitutional interpretation enunciated above, we do not believe that the voters of this state, when adopting the constitutional prohibition against political subdivisions levying taxes on motor fuel, understood "motor fuel" with reference to the technical definition provided by La. R.S. 47:712(1) dealing with the flash point of a volatile gas-generating liquid. The most common dictionary definition of the term "motor" is a device, such as a machine or engine, that generates, produces, or imparts motion. See, e.g. The American Heritage Dictionary of the English Language (4th ed.2000); Webster's II New College Dictionary *11 (1995); Webster's Third New International Dictionary of the English Language Unabridged (1968). The most common dictionary definition of the word "fuel" is matter or material consumed or burned to produce energy. See, e.g. The American Heritage Dictionary of the English Language (4th ed.2000); Webster's II New College Dictionary (1995); Webster's Third New International Dictionary of the English Language Unabridged (1968). In ordinary terms, then, "motor fuel," means a material that is burned to produce motion in a machine or engine. In our view, the layman's understanding of a prohibition against political subdivisions levying a tax on motor fuel would be that political subdivisions are denied the power to levy a tax on a material that is burned to produce motion in a machine or engine.
This understanding is supported by the history of La. Const. art. VII, § 4(C), whose source provision is Article XIV, § 24.1 of the 1921 Constitution. This section of the 1921 Constitution, entitled "Motor fuel; local taxation prohibited," provided:
No parish, municipality or other political subdivision, shall levy an excise, license or privilege tax upon gasoline, kerosene or other combustibles used in the generation of motive power; provided that nothing in this Constitution shall be construed to limit the right of the Legislature to levy State taxes on gasoline, benzine, naphtha and other motor fuels.
This provision of the 1921 Constitution appears to us to equate the terms "motor fuels" with gasoline, kerosene, benzine, naphtha, and other combustibles used in the generation of motive power. See generally Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958) (on rehearing).
The Committee Proposal of what is now La. Const. art. VII, § 4(C) stated, "Political subdivisions of the state shall not levy taxes on ... motor fuel." The comment to this provision stated, "The prohibition against political subdivisions taxing... motor fuel represents no change in the present law." Official Journal of the Proceedings of the Constitutional Convention of 1973 of the State of Louisiana, Vol. 1, 11th Days ProceedingsJuly 6, 1973, p. 127. See also R. Gordon Kean, Jr., Local Government and Home Rule, 21 Loy. L.Rev. 63, 73 n. 24 (1975) ("The prohibition against the levy of a ... motor fuel tax [in Article VII, § 4(C)] is a carry-over from the 1921 Constitution."). In light of the above, we believe the framers intended that the term "motor fuel" as used in La. Const. art. VII, § 4(C) mean substantially the same as a combustible used in the generation of motive power. This general definition comports with the intention previously ascribed to the voting population as a whole.
Consequently, we find that both the framers and the voters intended that political subdivisions be prohibited from levying a tax on a material that is burned to produce motion in a machine or engine, or, stated in a different way but with the same meaning, on a combustible used in the generation of motive power. The off-road diesel fuel at issue purchased by OEI was used primarily to operate the internal combustion engines of its marine vessels. As such, we believe the off-road diesel at issue falls within the term "motor fuel" as used in La. Const. art. VII, § 4(C).
PPG argues that a general definition of the term "motor fuel" that includes diesel fuel is unsupportable in light of a more recent amendment to the constitution that added La. Const. art. VII, § 27(A). This Article, effective January 1, 1990, established *12 the Transportation Trust Fund and provides in pertinent part:
Purchases of gasoline, diesel fuel, or special fuels which are subject to excise tax under Chapter 7 of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950 shall be exempt from the state sales tax and any sales tax levied by a political subdivision....
PPG contends that the court of appeal correctly reasoned that if we were to conclude that political subdivisions were unconditionally prohibited from levying a sales tax on diesel fuel under Article VII, § 4(C) of the constitution, then the constitutional exemption provided by La. Const. Art. VII, § 27(A) would be rendered meaningless or unnecessary. We do not agree with this assessment. First, Article VII, § 27(A) exempts only diesel fuel that is subject to the excise tax under Chapter 7 of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950. Because the diesel fuel at issue is not subject to the excise tax referred to in the Article, the exemption provided by Article VII, § 27(A) is inapplicable in this case. Second, as stated above, where the language of constitutional prohibition makes its aim evident and unequivocal, this court may not arrive at a construction that detracts from the effectiveness or manifest meaning and purpose of the provision by separately considering related constitutional provisions. Third, the exemption provided by La. Const. art. VII, § 27(A) can be construed as re-affirming the prohibition contained in Article VII, § 4(C) against political subdivisions levying taxes on diesel fuel used in the generation of motive power.
In a similar vein, PPG argues that several statutes, such as La. R.S. 47:305.37,[3] La. R.S. 47:305.20,[4] and La. R.S. *13 47:305.10,[5] provide exemptions from local sales tax on diesel fuel used for farm purposes, purchased for commercial fishing vessels, and purchased for first use beyond the territorial limits of Louisiana. PPG contends that these statutes indicate that local governments are free to tax diesel fuel unless a specific exemption applies. We find, however, that these statutes, which first provide an exemption from state taxes in applicable circumstances and then provide that the exemption shall, or in some cases may, be similarly applied to local taxes, serve to re-affirm the constitutional prohibition provided by La. Const. art. VII, § 4(C). In any case, the statutes cannot be construed to somehow authorize the levying of a tax prohibited by the constitution.
After thoroughly considering the constitutional language of the prohibition at issue, the history of the constitutional prohibition and the allegedly applicable statutes, the principles of constitutional interpretation, and the arguments of both parties, we conclude that the off-road diesel fuel purchased by OEI for use in the operation of the internal combustion engines of its marine vessels used to transport supplies and personnel and to service its offshore drilling and production facilities on the outer continental shelf of the Gulf of Mexico is included in the term "motor fuel" as used in La. Const. art. VII, § 4(C). As such, it is not subject to the sales and use tax imposed on tangible personal property by PPG. Accordingly, we reverse the judgment of the court of appeal that affirmed the district court's denial of OEI's motion for summary judgment and granting of PPG's motion for summary judgment.
The affidavit of OEI's production manager was introduced by OEI to show how the diesel fuel at issue was purchased and used during the tax period. The affidavit states that the fuel
was for motor fuel for vessels operated by OEI in connection with its offshore drilling and production facilities on the outer continental shelf of the Gulf of Mexico adjacent to Plaquemines Parish, Louisiana. The fuel was delivered by *14 OEI's vendors into the tanks of the vessels operated by OEI and used in the operation of the vessels' internal combustion engines for the generation of power to propel the vessels. A small amount of the diesel fuel purchased had other incidental uses for running of other equipment and as a solvent in the maintenance of wellhead equipment. Appearer estimates that not more than 2% of the fuel purchased during the period July 1, 1995 through June 30, 1998, was used for the incidental purposes other than as motor fuel.
(Emphasis added.) We have concluded herein that political subdivisions are prohibited from levying a tax on a material that is burned to produce motion in a machine or engine, or on a combustible used in the generation of motive power. It is not clear from the record whether all the off-road diesel fuel at issue was burned to produce motion in a machine or engine or was a combustible used in the generation of motive power. Consequently, we remand the case to the district court for further proceedings consistent with this opinion.

Decree
For the reasons expressed above, we conclude that La. Const. art. VII, § 4(C) prohibits the taxation by political subdivisions of off-road diesel that is burned to produce motion in a machine or engine, or is a combustible used in the generation of motive power. Consequently, the judgment of the court of appeal is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
CALOGERO, C.J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissenting.
I respectfully dissent from the majority's reversal of the two lower courts. The issue presented to us is whether Article VII, § 4(C) of the 1974 Constitution, which prohibits a political subdivision of the state from levying a tax on "motor fuel," prevents the Plaquemines Parish Government from levying a sales and use tax on dyed (off-road) diesel fuel purchased and consumed by Ocean Energy, Inc. In my view, the 1974 Constitution does not prohibit the Parish from levying the sales and use tax on the tangible personal property contested by the plaintiff, because the dyed diesel fuel purchased and consumed by the plaintiff was not "motor fuel" as that term is defined for purposes of the constitutional prohibition. Consequently, the purchase and consumption of this diesel fuel was subject to the Parish's sales and use tax ordinance pursuant to the Parish's taxing authority granted by La. Const. art. VI, § 29(A).
The Parish's arguments have merit, as two of our appellate courts have also found: the Fourth Circuit in Ocean Energy, Inc. v. Plaquemines Parish Government, 03-0805 (La.App. 4 Cir. 12/19/03), 863 So.2d 618, the opinion under review, and the First Circuit in Simons Petroleum, Inc. v. Dane Falgout, Sales Tax Director, for the Sales & Use Tax Department of the Pointe Coupee Parish Police Jury, 03-0610 (La.App. 1 Cir. 2/23/04), 873 So.2d 65, for which a writ application is pending in this court. Both courts have concluded that dyed (off-road) diesel fuel is not a "motor fuel" under La. Const. art. VII, § 4(C).
The majority today errs in failing to recognize that the phrase "motor fuel" is an unambiguous term with a specific technical meaning when used in the context of the imposition or prohibition of taxes on petroleum products. La. Civ.Code art. 11 *15 provides in part that "[w]ords of art and technical terms must be given their technical meaning when the law involves a technical matter." Pursuant to its constitutional authority under Article VI, § 22(a) of the 1921 Constitution, the legislature, by enactment in the 1920s of La.Rev.Stat. 47:712(1), which is contained in the Revenue and Taxation Chapter of the Revised Statutes concerning "Taxes on Petroleum Products," has defined "motor fuel" as "all volatile gas generating liquids having a flash point below 110 degrees F." The parties concede that dyed (off-road) diesel fuel does not satisfy this definition of motor fuel. Accordingly, I see no reason to refer to a dictionary definition of the term to determine the intent of the framers of the 1974 Constitution or of the voters accepting that constitution.
Even if I were to find that the term "motor fuel" is ambiguous because it is not defined in the constitution itself, I agree with the First Circuit's reasoning in Simons Petroleum that there exists relevant statutory material in the form of La.Rev. Stat. 47:712(1) to lend clarification to the term "motor fuel." See Simons Petroleum, Inc. v. Falgout, 03-0610, 873 So.2d at 71; see also La. Civ.Code art. 13; cf. City of New Orleans v. Scramuzza, 507 So.2d 215 (La.1987). Moreover, this definition, La.Rev.Stat. 47:712(1), had been recognized by the legislature for almost fifty years when the framers in 1973 crafted Article VII, § 4(C) of the 1974 Constitution to prohibit political subdivisions from levying a tax on "motor fuel."
I also see nothing in the legislative history of Article VII, § 4(C) necessitating resort to a dictionary or common sense definition of the phrase "motor fuel." The source provision in the 1921 Constitution, Article XIV, § 24.1, added by Act No. 395 of 1940 and ratified by the voters, prohibits the political subdivision from levying "an excise, license or privilege tax upon gasoline, kerosene or other combustibles used in the generation of motive power." However, that provision also specifies that there would be no restriction on the legislature's right "to levy State taxes on gasoline, benzine, naptha and other motor fuels." The majority combines these two enumerations as "motor fuels" while ignoring the fact that the 1921 Constitution elsewhere authorized the legislature to define "motor fuel," which the legislature had previously done in La.Rev.Stat. 47:712(1), a definition that does not include dyed (off-road) diesel fuel. That the framers of the 1974 Constitution did not intend to change the authority of the political subdivision to tax motor fuels does not necessarily translate into the conclusion that the term "motor fuels" as used in the 1921 Constitution now means something different when used in the 1974 Constitution.
The issue presented is a close one, and the Parish makes a persuasive argument that were we to hold that political subdivisions are prohibited from levying a sales and use tax on the purchase and consumption of dyed (off-road) diesel fuel under Article VII, § 4(C), various constitutional and legislative exemptions to the taxation of off-road diesel fuel by political subdivisions would essentially be redundant. See Simons Petroleum, Inc. v. Falgout, 03-0610, 873 So.2d at 73-74 and 74 n. 5. While La. Const. art. VII, § 27(A), and La. Rev. Stats. 47:305.37, 47:305.20, and 47:305.10 should not be construed as authorizing an otherwise prohibited tax by a political subdivision, these exemptions do raise a presumption that the legislature, as well as the voters ratifying Article VII, § 27(A) in 1990, understood that political subdivisions possessed the constitutional authority to levy sales and use taxes on dyed (off-road) diesel fuel in the absence of any exemption thereto.
*16 At any rate, my view, that there is no constitutional prohibition against a political subdivision levying a sales and use tax against tangible personal property that includes dyed (off-road) diesel fuel, is now consistent with the well-considered opinions of two unanimous panels of our courts of appeal. Accordingly, I dissent from the majority's reversal of the lower courts' summary judgment in favor of Plaquemines Parish Government.
NOTES
[1] The specific assessment was broken down as follows:

Delinquent Sales/Use Tax $151,124.77
Interest thru 05/01/00 79,369.49
Penalty 37,781.25
 ___________
Total Due: $268,275.51

[2] This constitutional prohibition against a political subdivision levying a tax on motor fuel is a limit on the taxing power of local governmental subdivisions. As a limit on the taxing power of local governments, it is not the same as a tax exemption that exempts certain property from taxation that would otherwise be subject to the tax. Consequently, the general principle that tax exemptions are an exceptional privilege and must be affirmatively and clearly established and are strictly construed against the taxpayer, Showboat Star Partnership v. Slaughter, 00-1227, p. 10 (La.4/3/01), 789 So.2d 554, 560; Bill Roberts, Inc. v. McNamara, 539 So.2d 1226, 1229 (La.1989); McNamara v. Central Marine Serv., Inc., 507 So.2d 207, 208 (La.1987), is inapplicable in this case.
[3] La. R.S. 47:305.37 provides:

A. The state taxes imposed by R.S. 47:302(A), R.S. 47:321(A), and R.S. 47:331(A) shall not apply to diesel fuel, butane, propane, or other liquefied petroleum gases used or consumed for farm purposes. The secretary of the Department of Revenue shall adopt and promulgate rules and regulations necessary to effectuate the exemptions granted by this Section.
B. In any parish having a population of more than one hundred twenty thousand persons but less than one hundred forty thousand persons based on the latest federal decennial census:
(1) The parish school board may by resolution adopted by the board provide an exemption from its sales and use tax as is provided for state sales tax in Subsection A of this Section.
(2) The governing authority of a municipality may by resolution or ordinance provide an exemption as is provided for state sales tax in Subsection A of this Section from its sales and use tax and all sales and use taxes of political subdivisions levied solely within the territory of the municipality, except school board taxes.
(3) The governing authority of a parish may by resolution or ordinance provide an exemption as is provided for state sales tax in Subsection A of this Section from its sales and use tax and all sales and use taxes of political subdivisions levied within the territory of the parish and all sales taxes levied both within and without the municipality, except school board taxes.
[4] La. R.S. 47:305.20 provides in pertinent part:

A. A Louisiana resident, domiciled in Louisiana, who possesses such valid Louisiana commercial fishing license(s) as may be necessary for commercial fishing ventures, and who is an owner-operator of a vessel operated primarily for the conduct of commercial fishing as a trade or business and which the Louisiana Department of Wildlife and Fisheries determines will be predominantly and principally used for commercial fishing ventures and whose catch is for human consumption shall be exempt from state sales, use, lease, and services taxes as set forth in Subsection C of this Section. Possession of a commercial license issued by the Department of Wildlife and Fisheries shall not be used as the sole determination that a vessel will be used predominantly and principally for commercial fishing ventures. This exemption shall also apply to facilities which process the catch from owner-operators of commercial fishing vessels for which this exemption is granted when such vessels are owned by, or leased or contracted exclusively to, the seafood processing facility.
* * *
C. An owner-operator who has obtained a certificate of exemption shall, with respect to the vessel identified in the certificate for the harvesting or production of fish and other aquatic life, including shrimp, oysters, and clams, and certain seafood processing facilities described in Subsection A, be exempt from the taxes described in Subsection A, as follows:
* * *
(4) Taxes applied to the purchase of gasoline, diesel fuel, and lubricants for the vessel and to sources of energy and fuels for the facility.
* * *
G. This exemption applies only to sales and use tax imposed by the state of Louisiana and does not apply to such taxes authorized and levied by any school board, municipality, or other local taxing authority notwithstanding any other provision of law to the contrary, specifically but not exclusively R.S. 33:2716.1.
[5] La. R.S. 47:305.10 provides in pertinent part:

A. There shall be no sales or use tax due upon the sale at retail or use of tangible personal property, including diesel fuel, purchased within or imported into Louisiana for first use exclusively beyond the territorial limits of Louisiana as specifically provided hereinafter in this Section.
* * *
I. The exemptions from the state sales and use tax provided in this Section shall be applicable to any sales and use tax levied by a local political subdivision or school board.