*117
 
 CLARENCE E. McMANUS, Judge.
 

 12Plaintiffs appeal from the decision of the trial court granting summary judgment in favor of defendants, dismissing plaintiffs’ suit for medical malpractice. For the reasons that follow, we affirm the decision of the trial court.
 

 On June 20, 2003, plaintiffs instituted a medical review panel, alleging that Dr. Shanableh committed medical malpractice in prescribing an excessive dose of Predni-sone. On November 17, 2005, the medical review panel rendered a unanimous opinion denying the complaint, finding that “The evidence does not support the conclusion that Ahmad M Shanableh, M.D. failed to comply with the appropriate standard of care[.]”
 

 Plaintiffs filed suit on January 9, 2006 against Dr. Ahmed Shanableh and Louisiana Medical Mutual Insurance Company. In their petition, they allege that on August 1, 2000 Dwight Nunley was referred to a pulmonolgy specialist, Dr. Eugene Rosenberg, for the purpose of evaluation and possible placement into a pulmonary rehabilitation program. At that time, Dr. Rosenberg prescribed a course of Predni-sone, 20mg daily, to be tapered to a minimum dose. Plaintiffs contend that Dr. Rosenberg informed Dr. Shanableh, Mr. Nunley’s primary care physician |3that Mr. Nunley should be kept on a small dose of Prednisone. However, Dr. Shanableh continued to prescribe 20mg Prednisone, and supplemented this course of treatment with Celestone injections. On September 21, 2001, Mr. Nunley again saw Dr. Rosenberg, who suggested that the Prednisone dose be lowered.
 

 Plaintiffs contend that as a result of the 20mg dose of Prednisone which he ingested daily for one year, he developed avascular necrosis of his left femoral head resulting in the necessity of a total left hip replacement, bilateral cataracts requiring surgery, right hip pain, right side TMJ, bilateral shoulder pain, bilateral elbow pain, back pain, loss of bone density, mood changes and hormonal changes. He further alleges that his body’s ability to produce cortisol had been suppressed and despite his best efforts to taper down to 5mg, he must now take 9-10mg of Prednisone daily.
 

 Plaintiffs further contend that Dr. Shan-ableh’s actions in continuing to prescribe 20 mg Prednisone, instead of a lesser dose, caused or contributed to his injuries and damages and constituted medical malpractice.
 

 On October 11, 2007 defendants filed a motion for summary judgment. In their motion they alleged that there was no genuine issue of material fact because plaintiffs failed to produce an expert medical witness to prove that Dr. Shanableh deviated from the prevailing standard of care for an internist, and failed to present an expert medical witness to prove that any breach of the prevailing standard of care caused any damage or injury to plaintiff. Plaintiffs opposed the motion, contending that the deposition of one of the medical review panel doctors created a material fact as to whether Dr. Shanableh breached the standard of care, and that the medical records of Mr. Nunley’s treatment created an issue of fact as to whether the breach caused Mr. Nunley’s injury.
 

 |4On February 28, 2008, the trial court rendered judgment granting the motion for summary judgment and dismissing plaintiffs’ suit. Plaintiffs have appealed from the decision of the trial court.
 

 A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is
 
 *118
 
 entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. La. C.C.P. art. 966(C)(2). If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. The failure of the
 
 non-moving
 
 party to produce evidence of a material factual dispute mandates the granting of the motion.
 
 Fat Tuesday Cafe, L.L.C. v. Foret,
 
 06-738 (La.App. 5 Cir. 2/13/07), 953 So.2d 821.
 

 This Court’s review of a grant or denial of a motion for summary judgment is de novo.
 
 Jones v. Estate of Santiago,
 
 03-1424, (La.4/14/04), 870 So.2d 1002, 1006. This Court asks the same questions as the district court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.
 
 Ocean Energy, Inc. v. Plaquemines Parish Government,
 
 04-0066 (La.7/6/04), 880 So.2d 1.
 

 In a medical malpractice action based on the negligence of a physician, the plaintiff has the burden of proving the applicable standard of care under similar circumstances, breach of that standard of care, and causation between the breach Land the injuries. La. R.S. 9:2794(A)
 
 [1]
 
 ;
 
 Wilson v. Ochsner Foundation Hosp.,
 
 05-953 (La.App. 5 Cir. 4/25/06), 927 So.2d 696, 698,
 
 writ denied
 
 06-1446 (La.9/22/06), 937 So.2d 393.
 

 Expert witnesses who are members of the medical profession are usually necessary sources of proof in medical malpractice actions to establish the standard of care under the circumstances and to determine whether the defendant doctor possessed the requisite degree of skill and knowledge or failed to exercise reasonable care and diligence.
 
 Hyman v. East Jefferson General Hosp.,
 
 04-1222 (La.App. 5 Cir. 3/1/05), 900 So.2d 124, 128.
 

 In this appeal, plaintiffs allege that it was error for the court to dismiss their claim. They contend that the deposition of Dr. Jay Shanes, expert for the defense and a member of the medical review panel, created a genuine issue of material fact to preclude summary judgment. They further contend that there is evidence to create a material issue of fact as to causation.
 

 In support of the motion for summary judgment, defendants offered the results of the medical review panel, a page of Dr. Shames’ deposition in which he states that he did not think that Dr. Shanableh deviated from the standard of care
 
 [2]
 
 , and the
 
 *119
 
 affidavit of Dr. Shanes in which he averred that he was “still of the opinion |fithat Ahmed Shanableh, M.D. complied with all applicable standards of care in all aspects of his care and treatment of Dwight Nun-ley.”
 

 In opposition to the motion for summary judgment, plaintiffs offered Mr. Nunley’s treatment records and a different portion of the deposition testimony of Dr. Jay Shames. In that portion of the deposition, Dr. Shames considered a hypothetical posed by plaintiffs attorney and concluded that there could have been a breach of the standard of care. This hypothetical, it is alleged, was based on facts as sworn to by Mr. Nunley and therefore is expert testimony sufficient to create a material issue of fact. Plaintiffs also offered certified medical records, in which they allege that Mr. Nunley’s treating physicians linked his medical issues to his Prednisone use. Plaintiffs did not list any expert witnesses that they intended to call at trial.
 

 In its reasons for judgment, the trial court found that
 

 ... this is not a case wherein a lay person can infer a breach in the standard of care. The question of whether mover prescribed the appropriate dosage of prednisone, the length of time plaintiff was on Prednisone, the side effects of it, and whether these issues caused damage to plaintiff and constituted a breach of the due standard of care is a complex medical issue. The plaintiff has not put forth any expert medical testimony to show a breach in the standard of care by mover.
 

 [[Image here]]
 

 Even assuming plaintiff could show a breach of the standard of care by mover in not tapering the dosage of predni-sone, plaintiff has no expert evidence to prove the causation element of his burden of proof.
 

 In this case, we agree with the trial court’s determination that plaintiffs have failed to present any specific evidence showing the existence of a genuine issue of material fact as to the issue of breach of standard of care. Accordingly plaintiffs have not established that they could satisfy their evidentiary burden at trial. Plaintiffs’ reliance on the deposition of mover’s expert, in which he states that 17there could have been a breach of care under a hypothetical situation, does not create an issue of fact, especially in light of the medical expert’s clear pronunciation, in affidavit in support of this motion, in deposition, and in the medical review panel determination, that Dr. Shanableh’s treatment did not fall below the accepted standard of care.
 

 Finding no error in the trial court’s determination that defendants were entitled to summary judgment, we affirm the judgment of the trial court. All costs are assessed against appellants.
 

 AFFIRMED.
 

 [1]
 

 . LSA-R.S. 9:2794 provides in part:
 

 A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq. ..., the plaintiff shall have the burden of proving:
 

 (1)The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
 

 (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
 

 (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
 

 [2]
 

 . The page of the deposition attached to the motion for summary judgment does not reflect who was deposed. The brief filed in conjunction with the summary judgment mo
 
 *119
 
 tion states that it is from the deposition of Dr. Shames.