HOLDRIDGE, J.
LThe City of New Roads (City) appeals a judgment of the trial court, which denied the City’s petition for declaratory judgment and related injunctive relief and dismissed the City’s petition, with prejudice. For the reasons that follow, we reverse and render.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Pursuant to LSA-Const. art. VI, § 26(A), the governing authority of a parish may levy annually an ad valorem tax for general purposes not to exceed four mills on the dollar of assessed valuation.[1] The Pointe Coupee Parish Police Jury (Police Jury) has exercised the authority granted to it by this provision to levy an ad valorem tax in Pointe Coupee Parish for general purposes at the rate of 3.42 mills. Article VI, § 26(C) of the Louisiana Constitution of 1974 addresses the amount of the parish tax that a parish may levy on property located wholly within any municipality and provides, as follows:
The amount of the parish tax for general purposes which any parish, except Orleans Parish, may levy, without a vote of the electors, on property located wholly within any municipality which has a population exceeding one thousand inhabitants according to the last federal decennial census, or other census authorized by law, and which provides and maintains a system of street paving, shall not exceed one-half the tax levy for general purposes.
On April 23, 2013, the Police Jury adopted a resolution providing for the levy of 3.42 mills of general ad valorem taxes within the various municipalities in Pointe Coupee Parish, including the municipalities of New Roads and Livonia. Prior to the adoption of this resolution, the millage rate on property in the municipalities of New Roads and Livonia had been 1.71 mills, or one-half the ad valorem tax levy for general purposes on the parish as a whole.
On July 18, 2013, the City filed a petition for declaratory judgment and injunc-tive relief, including a request for a temporary restraining order and a preliminary injunction, which challenged the tax levy pursuant to this resolution as unconstitutional and further sought injunctive relief, restraining any implementation of the increase in the parish ad \ ¿valorem general purposes tax rate on property located within the City from 1.71 mills to 3.42 mills.[2] Specifically, the City contended that the increase in the millage was in violation of LSA-Const. art. VI, § 26(C) (Section 26(C)). The Police Jury filed an answer to the petition, as well as a peremptory exception pleading the objection of no right of action. In its exception, the Police Jury argued that the City did not have the right to assert a cause of action reserved to citizens and taxpayers.
The City’s request for a preliminary injunction was set for a hearing on July 30, 2013, and by agreement of the parties,[3] *1041 that hearing was converted into a Ml bench trial on the merits of the petition for declaratory judgment, as well as the City’s request for a permanent injunction.[4] Pri- or to the trial, the trial court denied the Police Jury’s exception of no right of action, finding that it was acceptable for the mayor of the City to bring the underlying suit on behalf of the City’s citizens.
At the trial on the merits, the parties stipulated that the City had a population of more than 1,000; therefore, the only substantive issue before the trial court, with regard to the applicability of Section 26(C), was whether the City “provides and maintains a system of street paving.” After the trial, the trial court took the matter under advisement until the next day, when it issued written reasons for judgment in favor of the Police Jury, dismissing the City’s petition with prejudice. The trial court specifically found that the City had failed to demonstrate that it had provided and maintained a system of street paving in accordance with Section 26(C). In addition, the trial court noted that “the governmental guardian of the streets of New Roads, for the purposes of maintaining a system of street paving, is and has been for as far as anyone can remember, the Pointe Coupee Parish Police Jury.” On August 23, 2013, the trial court signed a written judgment in accordance with these written reasons. The City has appealed.
|4NO right of action
As a preliminary matter, we note that the Police Jury has purportedly assigned as error the trial court’s denial of its peremptory exception of no right of action. Although the Police Jury acknowledges its concurrence with the trial court’s judgment on the merits, it asserts that the trial court erred in denying the exception of no right of action, thus finding that the City had standing to bring the underlying action on behalf of the citizens of New Roads. However, our review of the record indicates that the Police Jury failed to file an answer to the City’s appeal. See LSA-C.C.P. art. 2133(A). Even so, we discern no error on the part of the trial court in denying the Police Jury’s peremptory exception of no right of action. Accordingly, we proceed to address the merits of the City’s appeal.
standard of review
The parties disagree as to the standard of review to be applied to this matter. The Police Jury contends that the trial court’s determination that the City did not provide and maintain a system of street paving within the meaning of Section 26(C) was a finding of fact, which must be reviewed pursuant to the manifest error/clearly wrong standard of review. In applying this standard of review, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State, through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993). If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse those findings even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Hulsey v. Sears, Roebuck & Co., 96-2704 (La.App. 1st Cir.12/29/97), 705 So.2d 1173, 1176-77.
According to the City, however, the trial court applied the improper legal standard in rendering its decision, which interdicted the fact-finding process. Thus, the City *1042 argues that the trial court committed legal error and that this court should subject the entire record to a de novo review and render a judgment on the merits. See Lam ex rel. Lam v. State Farm Mutual Automobile Insurance Company, 05-1139 (La.11/29/06), 946 So.2d 133, 135.
In finding that the City had not provided and maintained a system of street paving within the meaning of Section 26(C), the trial court stated that the City’s burden of proof had been established in Pearce v. Couvillon, 164 La. 155, 161, 113 So. 801, 803 (1927), which provides:
The object of plaintiffs’ suit is to secure an exemption from taxation. Such an exemption is an exceptional privilege, and it must be clearly and unequivocally and affirmatively established, for it is an elementary rule of construction in our jurisprudence that exemptions are strictly construed.
The trial court further stated that the City had fallen short of satisfying the “very narrow and strictly construed test exempting the citizens of New Roads from the Parish’s increase in tax_”
In Pearce, the Louisiana Supreme Court was interpreting Article XIV, § 8 (the predecessor provision) of the Louisiana Constitution of 1921, the predecessor provision to Section 26(C), which provided:
No parish, parish of Orleans excepted, shall levy for parochial purposes, on property located wholly within incorporated cities and towns of the state, having a population in excess of one thousand (1,000) inhabitants, according to the last census, which provide and maintain systems of street paving, any general parochial tax in excess of one-half the levy for general parochial purposes; provided, that this section shall not apply in a parish which had a general unbonded indebtedness on January 1st, 1921, until said debt has been paid or funded into bonds.
In that case, certain resident property owners of Bunkie had filed suit to enjoin the collection of two mills of a four-mill tax levied by the police jury of Avoyelles Parish for general parochial purposes. As in the case before this court, various factual stipulations were made, such that the only issue before the trial court was whether the town of Bunkie provided and maintained a system of street paving within the meaning and intent of the predecessor provision. Pearce, 164 La. at 156-57, 113 So. at 801. In finding that the town did not provide or maintain such a system, the supreme court applied the strict construction standard noted above, which is applicable to exemptions from taxation. Pearce, 164 La. at 161, 113 So. at 803.
The City contends that the application of this strict construction standard by the trial court in the matter before this court was legal error. According to the City, Section | fi26(C) is a constitutional limitation on the power of the Police Jury to levy an ad valorem tax, rather than an exemption of a class of property from an otherwise permissible tax. As such, the City concludes that the stricter standard should not apply. See Ocean Energy, Inc. v. Plaquemines Parish Government, 04-0066 (La.7/6/04), 880 So.2d 1, 6 n. 2.
The City attempts to distinguish Pearce, which applied the stricter standard to the predecessor provision, by noting that it involved a challenge brought by taxpayers who sought to exempt specific property from taxation, rather than a challenge by the municipality itself to the levy of the tax by the Police Jury. However, we note that, in subsequent cases addressing the predecessor provision where the municipality itself was the plaintiff, the supreme court also .referred to the predecessor provision as an exemption. See Town of Winnsboro *1043 v. Price, 165 La. 702, 703, 115 So. 908 (1928); Town of Jonesboro v. Jackson Parish Police Jury, 174 La. 1063, 1068, 142 So. 689, 691 (1932); Town of Winnfield v. Police Jury of Winn Parish, 179 La. 171, 172-74, 153 So. 681, 682 (1934). However, at no point in these cases did the supreme court address why it considered the predecessor provision to be an exemption, rather than a constitutional limitation on the power of the parish governing authority to levy an ad valorem tax, nor did the court specifically state the standard of construction it had applied in interpreting the predecessor provision.
Since these cases were decided, the Louisiana Constitution of 1921 was superseded by the Louisiana Constitution of 1974, thus allowing Section 26(C) to replace the predecessor provision, which had been interpreted in those cases. Neither party has cited any case that interprets Section 26(C), nor has this court been able to find any. Accordingly, we must analyze Section 26(C) to determine whether it is an exemption or a limit on the taxing power of the parish governing authority to levy an ad valorem tax. That conclusion will determine the burden of proof to which the City should have been subjected at the trial court level, and will, in turn, determine the standard of review to which we will subject the trial court’s judgment.
The starting point in the interpretation of constitutional provisions is the 17language of the constitution itself. East Baton Rouge Parish School Bd. v. Foster, 02-2799 (La.6/6/03), 851 So.2d 985, 996. A plain reading of Section 26(C)[5] demonstrates that the provision speaks in terms of the amount of ad valorem tax that a parish is authorized to levy on property within a municipality, rather than on what property would be exempt from ad valo-rem taxation that the parish had properly levied. This distinction is made clearer when compared to the language of LSA-Const. art. VII, § 20(A)(1), which addresses the homestead exemption, and provides: “[t]he bona fide homestead ... shall be exempt from state, parish, and special ad valorem taxes to the extent of seven thousand five hundred dollars of the assessed valuation.” (Emphasis added.) Furthermore, LSA-Const. art. VII, § 21 provides that it and Section 20 establish the sole exemptions from ad valorem taxation. Section 21 does not include Section 26(C) among the list of exemptions from ad valo-rem taxation. Accordingly, we must conclude that Section 26(C) is a constitutional limitation on the power of the parish governing authority to levy an ad valorem tax, rather than an exemption of a class of property from an otherwise permissible tax.
Because we have determined that Section 26(C) is a constitutional limitation on the taxing power of the parish governing authority, the general principle that tax exemptions are an exceptional privilege and must be affirmatively and clearly established and are strictly construed against the taxpayer is inapplicable to this matter. Ocean Energy, Inc., 880 So.2d at 6 n. 2. Since the trial court applied that standard in deciding this case, we find that it committed legal error, which interdicted the fact-finding process. Accordingly, we must subject this matter to a de novo *1044 review and render a judgment on the merits: See Lam ex rel. Lam, 946 So.2d at 135.
DISCUSSION
As noted above, the sole issue before the trial court in this matter was whether |sthe City “provides and maintains a system of street paving” within the meaning of Section 26(C). The phrase, “a system of street paving,” is not defined in the constitution, nor has Section 26(C) been interpreted by the courts. However, the predecessor provision has been interpreted by the Louisiana Supreme Court.[6]
In Pearce, certain resident property owners in Bunkie filed suit to enjoin the collection of two mills of a four-mill tax, which had been levied by the Avoyelles Parish Police Jury for general parochial purposes. The trial court found that the tax was valid and dismissed the suit, and the plaintiffs appealed. Pearce, 164 La. at 156, 113 So. at 801. As in this case, the sole issue was whether the town of Bunkie provided and maintained a system of street paving within the meaning of the predecessor provision. Pearce, 164 La. at 161, 113 So. at 803.
The plaintiffs argued that graveled streets with concrete sidewalks fell within the definition of paving and that the maintenance of such streets and sidewalks constituted a system of street paving within the meaning of the predecessor provision. In opposition, the defendants contended that spreading loose gravel on a dirt foundation was not paving. Rather, the defendants insisted that paving involved laying some suitable substance on a compact foundation so as to form a hard or level surface. Pearce, 164 La. at 161, 113 So. at 803. After considering numerous definitions of paving or pavement, the court determined that any substance that was spread upon the street so as to form a compact, hard, or level surface or floor may be properly designated as pavement. Pearce, 164 La. at 160, 113 So. at 802. With regard to the specific facts of the case, the court stated:
[Cjounsel have not furnished us with an authority, and we have failed to find a case, in which it was held that the spreading of loose gravel upon a dirt road can, under any circumstances, be considered as paving, and that is the system of streets, according to the expert testimony of Mr. W.E. Atkinson, which is provided and maintained by the town of Bunkie. When gravel is mixed with sand and cement, it may be laid so as to form a hard, level surface or pavement, but not otherwise.
Pearce, 164 La. at 161, 113 So. at 803. Thus, the court concluded that the plaintiff's 19had failed to demonstrate that Bunk-ie had provided and maintained a system of street paving.
In Town of Winnsboro, the town filed suit to restrain the assessor, the tax collector, and the Parish of Franklin from collecting from the citizens of Winnsboro more than one-half of the general parochial tax. As in Pearce and the case before this court, the sole issue for decision was whether the town provided and maintained a system of street paving. In addition to the factual stipulations regarding population and debt, which were necessary to meet the requirements of the predecessor provision, it was also undisputed that the town had laid and maintained 2,800 lineal feet of concrete pavement, which had all *1045 been provided for by assessment against the property owners through the regular channels of the town government. Specifically, these paving projects had been provided through ordinances passed and contracts let by the town council. Town of Winnsboro, 165 La. at 703, 115 So. at 908.
In finding that the 2,800 lineal feet of concrete pavement was sufficient to constitute a system of street paving, the court stated:
We also think that the benefit of the exemption applies to all towns which have begun in good faith, and have pursued in good faith, according to its needs, the paving of its streets with permanent hard-surface roadways. It was undoubtedly the intention of the Constitution to encourage the paving of city streets with hard-surface material. Cf. Pearce v. Couvillon, 164 La. 155, 113 So. 801 [ (1927) ]. But to all such things there must be a beginning; and the only question in such cases is whether such beginning was in good faith and not a mere pretext for escaping parish taxation, for the only requirement of the Constitution is that the municipality shall (in good faith) ‘provide and maintain’ such a system. It is not pretended here that the town is not proceeding in good faith with a system of hard-surface street paving; and it is of no consequence that the pavement which has actually been completed at this time was undertaken at the instance of the property holders, and was paid for entirely by themselves. This only goes to show that the inhabitants of the town are in earnest in wanting their streets paved, and their wishes will certainly be reflected in the action of their town council elected by themselves.
Town of Winnsboro, 165 La. at 704, 115 So. at 908.
In Town of Jonesboro, the town alleged that it provided and maintained a system of street paving and that the property located within the limits of the town was therefore exempt, under the predecessor provision, from the payment of one-half of a general four-mill tax levied on this property by the Jackson Parish Police Jury for hngeneral parochial purposes for the year 1931. The trial court granted judgment in favor of the town, and the defendants appealed. Town of Jonesboro, 174 La. at 1064, 142 So. at 690.
On appeal, the supreme court reversed. The court noted that, in 1930, the Louisiana highway commission had paved Main Street[7] and Allen Avenue in the town of Jonesboro to a width of eighteen feet. The actual work had been performed by a contracting firm named Harvey & Jones, which had received the contract from the Louisiana highway commission. Town of Jonesboro, 174 La. at 1065-66, 142 So. at 690. At the same time, the town of Jones-boro, through its governing authorities, let another contract to Harvey & Jones for the widening of the paving laid by Harvey & Jones on Main Street and Allen Avenue pursuant to its contract with the Louisiana highway commission. Therefore, Harvey & Jones paved and widened these streets in accordance with their contracts with the Louisiana highway commission and the town of Jonesboro at the same time and pursuant'to the same specifications. Town of Jonesboro, 174 La. at 1066, 142 So. at 690.
In finding that the town of Jonesboro had failed to provide or maintain a system of street paving, the supreme court stated:
It is clear from the above statement of facts that the town of Jonesboro has not *1046 provided, and does not maintain, a separate paving system or program, in which it has designated any particular street or streets to be paved and maintained; but has merely followed the right of way laid out by the Louisiana highway commission through the town of Jonesboro, and has only provided for the widening of this right of way for the sole benefit of abutting property owners who have paid the cost.
The streets in Jonesboro have been paved jointly by the Louisiana highway commission and the town, and are maintained jointly by them, the highway commission having paved 18 feet and the town the rest, at one and the same time, by the same contractors, and under the same specifications.
The Louisiana highway commission owns no particular part of the paving in these streets, and is as much obligated to maintain any one foot of this paving as the town is. Besides, the Louisiana highway commission unquestionably has jurisdiction over its 60-foot right of way, running through the town of Jonesboro and known as Main, or Fifth street, and Allen avenue, and must be consulted if anything is done to these streets by the town.
Mr. May, the mayor of the town of Jonesboro at the time these paving contracts were let, states that there was a general demand for paving over the town of Jonesboro, that the council felt that it could not |nineet the entire demand, and that they would not pay out any money for paving; and that these paving contracts would not have been let at all, had it not been for the fact that the Louisiana highway commission was about to lay its 18 feet of paving through the town of Jonesboro.
[The predecessor provision] clearly contemplates that each incorporated town or city must provide and maintain its own separate and independent system or program of paving, and must bear the whole burden of it, in the manner provided by law, in order to claim exemption from one-half the levy for general parochial purposes on property located wholly within the corporate limits.
Town of Jonesboro, 174 La. at 1067-68, 142 So. at 691.
Finally, in Town of Winnfield, the supreme court addressed facts similar to those found in Town of Jonesboro. In this case, the Louisiana highway commission laid paving through the center of certain streets in the town of Winnfield. As in Toum of Jonesboro, the paving was only eighteen feet wide, leaving a strip of twenty-seven feet unpaved on each side.[8] The adjacent property owners then petitioned the town authorities to issue certificates of indebtedness in order to raise sufficient funds for the paving of the unpaved portion of the roads, as well as for other paving. In response to this request, the town authorities issued the certificates, which amounted to more than $100,000. In order to pay these certificates and the interest thereon, the town authorities levied assessments against the property of the abutting landowners. Town of Winnfield, 179 La. at 174, 153 So. at 682.
Thereafter, the town authorities let out separate contracts for doing this paving, and the contractors were paid out of the proceeds of the certificates. In addition to the widening work done on the roads previously paved by the Louisiana highway commission, certain other streets were paved independently of any work done by the highway commission. Furthermore, in *1047 1929, the town of Winnfield had previously been authorized by the voters to levy a tax of 2 mills on all of the property in the town, with the proceeds to be used for street improvement purposes. The town authorities levied this tax, which was being collected annually and used for street improvements. Town of Winnfield, 179 La. at 174, 153 So. at 682-83. Based on those facts, the supreme court approved the finding of the trial court that the town of Winnfield had in good faith begun and was maintaining an independent system of street paving. Town of Winnfield, 179 La. at 175, 153 So. at 683.
Based on these cases, the supreme court has set forth certain requirements, which must be met in order for a municipality to prove that it is providing and maintaining a system of street paving within the meaning of the predecessor provision. First, the municipality must have begun in good faith, and pursued in good faith, according to its needs, the paving of its streets with permanent, hard-surface roadways. Town of Winnsboro, 165 La. at 704, 115 So. at 908. The paving efforts must be in good faith and not a mere pretext to avoid parish taxation. Id. In addition, the supreme court has stated that the municipality must provide and maintain its own separate and independent system of street paving. Town of Jonesboro, 174 La. at 1068, 142 So. at 691; Town of Winnfield, 179 La. at 175, 153 So. at 683. Finally, in Town of Jonesboro, 174 La. at 1068, 142 So. at 691, the supreme court appeared to establish a third requirement, not found in the other cases, which is the cause of some dispute in the matter currently before this court. Specifically, the court stated that, in addition to providing and maintaining a separate and independent system of street paving, the municipality “must bear the whole burden of it, in the manner provided by law.” Town of Jonesboro, 174 La. at 1068, 142 So. at 691. We must now address the facts of this case in light of this jurisprudence.[9]
The City’s Street Paving Program
The trial of this matter was held on July 30, 2013. As of that date, Robert Myer had been the City’s mayor for approximately two and half years. In an effort to create new funding for the City, and in particular for road projects within the City, Mayor Myer cut costs across the board, including personnel. He also oversaw the reissuance of the City’s general purpose bonds at a more favorable interest rate, which allowed the City to raise $2.5 million that could be used on several Infrastructure projects, which are | ^discussed below.[10] These bonds were repaid through the City’s general operating revenues, which were generated in its Enterprise funds and General funds. These operating revenues come from administrative fees, such as billing and meter reading, inter-fund transfers, sales tax, and a small prop *1048 erty tax. None of these revenues have been statutorily dedicated to street paving.

The Memorial Boulevard Project

This road was initially discussed as far back as 2005, when it was intended to be built as part of an agreement to bring a Walmart to New Roads. Walmart had wanted the road to be built to provide access to the proposed store. Pursuant to these discussions, the projected cost of the road was $500,000, and the Police Jury was to bear the entire cost of the project, with the City bearing no responsibility for funding the construction. However, the Wal-mart was not built, and the project lay dormant, until Mayor Myer took office and resurrected it in a different form.
The original concept for the project simply called for the construction of a typical rural road. However, Mayor Myer and the city council wanted to develop an economic development corridor, which called for the construction of a paved road with a median, subsurface drainage, and walking paths. In addition to these features, the City’s specifications also called for the construction of a traffic circle, which was included to allow the addition of new, paved roads and to accommodate future economic development. In 2011, with this new design in mind, the City came to terms with a contractor to construct Memorial Boulevard to specifications provided by the City. The City and the contractor were the only parties to the contract; the Police Jury was not a party and, therefore, was not obligated under the terms of the contract.
The City had originally estimated the cost of the project to be $700,000; however, the costs of the project continued to rise. Therefore, Mayor Myer approached the Police Jury and asked if it would support the project, as it had originally agreed to do many years before. In response, the Police Jury agreed to contribute $450,000. | HThe total cost of the project was $1.7 million, of which $1.3 million was paid by the City out of its bond revenues and general operating funds. Because of this expense, the City was unable to build a proposed new eity hall that had been planned and budgeted.

The Tenth Street Extension Project

This project involves the extension of Tenth Street to provide paved access to a public park. In addition, the project plans to link Tenth Street with a public, paved road, which is to be constructed to City specifications by the developer of the new Orchard View Subdivision. In addition, the project redesigns the existing intersection with Cherry Street. Mayor Myer began developing the project in 2012; however, the project had originally been provided for in 2005, as part of the cash sale by which the City acquired some of the property for the park to which Tenth Street was now going to be extended to provide access.
At trial, the mayor testified that the contract documents and specifications had been prepared by the City and that the project had been bid out; however, ground had not yet been broken on the project, because the bidding process was not yet complete. Mayor Myer further testified that the project had been budgeted[11] and was being funded entirely by the City and that, as soon as bidding was complete, he expected work to start on the project.

The King Subdivision Project

This project involves the construction of a new, paved road to provide an evacuation route for residents of King Subdivision, who had previously had difficulty evacuating the area in the event of train derail *1049 ment and flooding. During his time in office, Mayor Myer has overseen the development of specifications for this project. Such specifications currently include a plan for an outlet road from Martin Drive[12] in King Subdivision to connect to Cherry Street, which would allow for-the evacuation needs of the subdivision.
11sAt the time of trial, the City had budgeted $600,000 for this project and was in the process of acquiring the rights of way so that the project could proceed. At the trial, both the mayor and a representative of the Police Jury testified that the Police Jury had agreed to contribute $250,000 to the project.[13]

The Industrial Park Project

The mayor testified that, when he took office, he did some research and discovered that very few municipalities the size of the City did not have some type of industrial business park. Therefore, as part of the bond reissuance, the mayor and the city council set aside funds for such a *1050 project. Once the City decided on a site for the industrial park, an access road had to be designed, which included improvements to an existing intersection. The City decided to build a limestone access road for this project. While there was some dispute about whether a limestone road was sufficient to | Tficonstitute a paved road, Mayor Myer testified that limestone was a hard surface. He further testified that the existing surface of the area, where the road would be, was dirt and that the City would be laying a limestone base and a limestone hard surface over the dirt. There was no evidence that this road would simply be the kind of gravel roads described in Pearce, which were found not to constitute paving.
At the time of trial, the City had completed all engineering designs and schematics for the project and was negotiating with the railroad for a complete right of way for the access road. In addition, the City’s economic development representative had been working with the Louisiana Economic Development Department to bring new industries to the City. However, no ground had been broken on the project, because other projects had taken priority in the City’s limited budget.
The Police Jury’s Road Maintenance Program
The maintenance and upkeep of all roads in the parish, including those within the City, is provided by the Police Jury.[14] This maintenance program is funded by a half-cent sales tax collected throughout the Parish, including the City, as well as by contributions from the state’s Parish Transportation Fund and the parish’s general fund. See LSA-R.S. 48:751; see also LSA-Const. art. VII, § 27. The sales tax generates approximately $1.5 to $1.6 million per year. Furthermore, the funds from the sales tax, as well as those from the Parish Transportation Fund, are legally dedicated to the construction and maintenance of roads throughout the parish.
However, although the Police Jury’s plan comprises the maintenance and upkeep of all existing paved public roads in the parish, it does not include the building of new roads or the paving of previously unpaved roads. The testimony in the record demonstrated that the Police Jury has never built a new road or paved a previously unpaved road within the City. Jimmy Bello, the parish administrator for the Police Jury, acknowledged that the Police Jury had not built any new roads in the City; however, he testified that the new roads built by the City would be taken into the Police Jury’s | ^inventory for maintenance and upkeep.
Analysis
In reviewing these facts in light of the jurisprudence, it is clear that the City provides and maintains a system of street paving within the meaning of Section 26(C). There has been no serious assertion that the City’s street paving program is a pretext to avoid parish taxation, and the testimony and evidence in the record clearly demonstrate that the program is an attempt on the part of the City to build new streets in an effort to spur economic growth, as well as to provide for the needs of the City.
Furthermore, in finding that the City had failed to meet its burden, the trial *1051 court spent considerable time comparing the City’s street paving program with the Police Jury’s program. Ultimately, the trial court found that the Police Jury was the “governmental guardian” of the City’s streets for the purposes of maintaining a system of street paving, presumably because the Police Jury is the entity that provides the maintenance and upkeep for the City’s streets. However, this comparison demonstrates the second element established by the jurisprudence, i.e., that the system of street paving must be separate and independent from any other system of street paving. While the Police Jury’s system of street paving provides only for the maintenance and upkeep of all roads in the parish, including those within the City, the City’s system of street paving currently provides for the construction of new streets within the City. There is no dispute that the Police Jury does not build new streets within the City. Therefore, the two systems are clearly separate and do not overlap in any way.[15]
The final element established in the jurisprudence is that the municipality “must bear the whole burden of [the system of street paving], in the manner provided by law.” Town of Jonesboro, 174 La. at 1068, 142 So. at 691. The Police Jury contends that this element requires the City to pay for all of its projects on its own, without accepting funds from the Police Jury. According to the Police Jury, because the City received $450,000 from the Police Jury for the Memorial Boulevard Project and had |18accepted the in-kind donation for the King Subdivision Project, the City’s system of street paving was not independent, nor did the City bear the entire burden of it. The City contends that its program is still independent, even though it accepts funding from the Police Jury, just as the Police Jury accepts funding from the state’s Parish Transportation Fund.
Furthermore, we find that the concept that the City must bear the entire burden of its system of street paving does not mean that the City cannot receive funding, or other assistance, from the Police Jury or other entities to carry out its projects. In Town of Jonesboro, the supreme court determined that the town had not provided and maintained a system of street paving, because the town and the Louisiana highway commission had jointly paved the streets in the town. More to the point, the highway commission had' begun certain paving projects within the town, and the town simply attempted to attach itself to those projects and claim them as its own for the purpose of avoiding parish taxation. The facts of the case indicated that the highway commission had control of the rights of way and had designed the specifications for the paving projects, while the town was simply widening the roads to the specifications set by the highway commission, and within its right of way. Town of Jonesboro, 174 La. at 1067-68, 142 So. at 691.
However, in Town of Winnfield, the supreme court addressed similar facts and came to a different conclusion. In that case, the highway commission had laid paving over the center of certain streets in the town. As in Town of Jonesboro, the town chose to widen the paving on those streets; however, unlike in Town of Jones-boro, the widening was performed in a *1052 separate project, not connected to the highway commission’s project. Furthermore, the town issued its own bond certificates to fund the widening project, as well as additional paving projects, which the town itself oversaw. Town of Winnfield, 179 La. at 174, 153 So. at 682-83.
As these cases make clear, the issue of whether a municipality “bears the entire burden of it” is not simply whether the municipality pays for the entire project itself, but whether the municipality is the administrator of, or is in control of, the project. In Town of Jonesboro, the town simply attached itself to a project of the highway commission and used its rights of way, specifications, and its funding to complete the project.[16] However, in Town of Winnfield, although the highway commission had already done some of the paving, the town raised its own funds, and administered its own project to complete the paving, as well as to complete other paving projects.
In the case before this court, the City raised the majority of the funding for the Memorial Boulevard Project. In addition, the City alone let the contract for the project, designed the specifications for the project, and oversaw the completion of the project. The Police Jury donated funds to help complete construction, but it had no role in determining how the project was to be administered.[17] Furthermore, we note that the City was responsible for the design of all of the specifications for each of the currently planned projects listed above. In addition, as of the time of trial, the City had planned to pay for the complete costs of all of the remaining projects, except for the King Subdivision Project, for which they will receive an in-kind donation from the Police Jury. Accordingly, we find that the City has borne the entire burden of its system of street paving within the meaning of the jurisprudence.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed, and we render judgment in favor of the City of New Roads, declaring that the action of the Pointe Coupee Parish Police Jury in increasing the ad valorem, tax rate for general purposes within the City of New Roads, from 1.71 mills to 3.42 mills, is in violation of LSA-Const. art. VI, § 26(C). We further grant a permanent injunction prohibiting the Pointe Coupee Parish Police Jury from increasing the ad valorem tax rate for general purposes within the City of New Roads from 1.71 mills to 3.42 mills.
MOTIONS GRANTED; JUDGMENT REVERSED AND RENDERED.
THERIOT, J. by GH, dissents for reasons assigned by J., GUIDRY.
GUIDRY, J., dissents and assigns reasons.

.This provision authorizes millage rates in Orleans Parish and Jackson Parish to be levied annually at seven mills and five mills respectively. In addition, the provision allows the millage rate to be increased in any parish when the increase is approved by a majority of the electors voting thereon in an election held for that purpose.

. The municipality of Livonia has not challenged the increase in ad valorem taxation.

. The City named as defendants the Police Jury and James A. Laurent, Jr., the Pointe Coupee Parish Assessor.

. The trial court had previously granted the City's request for a temporary restraining order, which was set to expire on July 30, 2013.

. As noted above, Section 26(C) provides:
The amount of the parish tax for general purposes which any parish, except Orleans Parish, may levy, without a vote of the electors, on property located wholly within any municipality which has a population exceeding one thousand inhabitants according to the last federal decennial census, or other census authorized by law, and which provides and maintains a system of street paving, shall not exceed one-half the tax levy for general purposes.

. As noted previously, these cases have interpreted the predecessor provision to be an exemption from taxation, without explanation or analysis. However, we have analyzed the language of Section 26(C) and found it to be a limitation on the power of the parish governing authority to levy an ad valorem tax.

. Main Street was also known as Fifth Street.

. The streets in the town of Winnfield had a width of seventy-two feet.

. We acknowledge that these cases do not interpret Section 26(C). However, it is a well-established rule of constitutional construction that where a constitutional provision similar or identical to that used in a prior constitution is adopted, it is presumed such provision was adopted with the construction previously placed on it by the jurisprudence. Succession of Lauga, 624 So.2d 1156, 1167 (La.1993). While there are certain differences between the predecessor provision and Section 26(C), the phrase, ''provides and maintains a system of street paving,” which is at the heart of this case, remains unchanged.

. Of these funds, $700,000 was allocated to the Memorial Boulevard Project, $250,000 was allocated to the Industrial Park Project, and $500,000 was allocated to the King Subdivision Project. Each of these projects will be discussed in more detail below.

. This project was not part of the bond reis-suance. The funding for this project was budgeted to come from the City’s regular operating funds.

. This project is also referred to as the Martin Drive project or the Martin Drive Outlet Project in the record.

. Subsequent to the trial, the Police Jury voted to rescind its contribution to this project at a meeting on April 8, 2014. However, during oral arguments before this court on May 2, 2014, counsel for the Police Jury continued to state that the Police Jury intended to contribute funds to the project. Although several members of the Police Jury were present during oral arguments, none of them attempted to correct counsel's incorrect statements to this court. Accordingly, after oral arguments, counsel for the City filed a motion for leave to file a supplemental brief and a motion for an order correcting the appellate record by inclusion of a specifically identified document. Specifically, the City sought to correct the record by placing into the appellate record the resolution of the Police Jury dated April 8, 2014, which demonstrated that the Police Jury had voted to rescind the contribution of $250,000 that it had earlier agreed to make. This court granted both motions on May 13, 2014.
However, although the resolution was specifically identified, the City failed to attach the resolution to the original motion. Therefore, the City has filed another motion to file the specifically identified document in compliance with this court's order of May 13, 2014. The Police Jury has filed a motion to reconsider the order allowing the supplement to the record and to rescind the order allowing for the supplemental brief, or alternatively, a motion to supplement the record and allow for reply brief to the supplemental brief.
The Police Jury contends that documents and evidence of actions transpiring after the trial of the matter should not be introduced into the appellate record, because they were not considered by the trial court. However, we note that, in this instance, the documents at issue directly contradict the evidence presented at the trial court, and to this court, particularly when we note that, at the time the evidence was presented to this court, the members of the Police Jury, who were present in the court, knew that the assertions were false. Accordingly, as we have already determined that the Police Jury resolution of April 8, 2014, should be included in the record, we ■grant the City’s motion to file the specifically identified document in compliance with this court’s order of May 13, 2014.
The Police Jury contends, in the alternative, that this court should allow it to supplement the record with two documents, which indicate that, although the Police Jury had rescinded its monetary donation to the City for this project, the Police Jury was willing to make an in-kind donation to the City to assist with the project. Specifically, the first document is a letter from the Parish Administrator to Mayor Myer, stating that the cash donation had been rescinded, because the Police Jury was not going to have a road maintenance and rehabilitation program in 2014. Nevertheless, the Police Jury offered to assist the City by providing parish equipment to cut into the road, dig needed drainage ditches, and place aggregate on the outlet road. The second letter is the minutes of a city council meeting in which the council voted to accept the Police Jury’s offer of in-kind assistance, which had been valued at $150,000 to $200,000. For completeness of the record, we grant the Police Jury’s alternative motion to supplement the record and to allow for a reply brief to the supplemental brief.

. The City also repaves roads within the City when such repaving is necessary because of other work performed‘by the City. For example, at trial, the City testified that it had repaved and resurfaced portions of Berthier Street, because it had been damaged during a sewer rehabilitation project carried out by the City. However, the City acknowledged that it did not repave the whole road and that it only repaved and resurfaced those portions that had been taken out by the sewer work.

. We acknowledge that, at the time of trial, the City had completed only one project and had three others in various stages of completion. However, as noted in Town of Winns-boro, there must be a beginning to every system of street paving. The only question is whether this beginning is in good faith and is not a mere pretext for escaping parish taxation. Town of Winnsboro, 165 La. at 704, 115 So. at 908.

. Any additional funding was raised by charging the abutting landowners only. Town of Jonesboro, 174 La. at 1067, 142 So. at 691.

. Jimmy Bello testified, when questioned about the funding that the Police Jury received from the Parish Transportation Fund, that the fact that the Police Jury receives some funding from the state did not change the fact that the Police Jury administers its paving program. We find the same to be true of the City’s street paving program.