GARRETT, J.
| iThis matter is before us as an expedited appeal, pursuant to La. R.S. 13:5128. The plaintiffs, Town of Sterlington and Lucia Holtzclaw,[1] appeal from a trial court judgment denying their challenge to the proposed expenditure of ad valorem tax proceeds by the East Ouachita Recreational District No. 1 (“EORD”) to secure bonds and their request for an injunction prohibiting the issuance of the proposed bonds. For the reasons outlined below, we affirm the trial court judgment.
FACTS
On April 18, 1977, the Ouachita Parish Police Jury (“OPPJ”) created the EORD for the purpose of owning and operating playgrounds and other facilities and generally to engage in activities which would promote recreation and any related activity designed to encourage recreation and promote the general health and well-being of youths.[2] Pursuant to those purposes, the EORD opened three recreational facilities, namely, Swartz-Lakeshore (“Swartz”), Osterland and Sterlington. The EORD derives its funding primarily from a property *383 tax of 7.48 mills and the revenue it generates through the programs conducted at the facilities.

Ad Valorem Tax Renewal

On November 17, 2014, the OPPJ adopted a resolution approving a request by the EORD to hold a special election seeking voter approval for a special property tax (“ad valorem tax”) renewal proposition.[3] The adlavalorem tax was to cover a purpose of constructing, improving, maintaining, operating and equipping the recreational facilities of the District.” The voters approved the tax on March 28, 2015. period of 10 years (2016-2025), for the
The EORD then moved forward with plans to upgrade the facilities, determining to upgrade one facility at a time. Osterland was the facility chosen for the initial upgrades due to its central location and the fact that it would cause the least disruption to game schedules during construction.
On September 26, 2016, the EORD adopted a resolution authorizing the issuance of limited tax bonds (“Bonds”),[4] not to exceed $5,000,000,00, for the purpose of “constructing, improving and equipping recreational facilities of the Issuer within its jurisdiction,” payable from the ad valorem tax. Notice of the EORD’s actions was published in a local weekly newspaper on September 29, 2016.[5] On October 3, 2016, the OPPJ adopted a resolution approving the issuance of the bonds.

Tourism Grant

On July 10, 2016, the EORD submitted an application for a capital improvement grant for both the Swartz and Osterland facilities with the Monroe-West Monroe Convention and Visitors Bureau (“CVB”), whose stated mission is “to attract conventions and tourists to the area.”[6] The CVB 1 ¡¡offers grants for the purpose of developing the tourism industry in Ouachita Parish. The CVB is funded by hotel occupancy taxes, and grant applicants are required to demonstrate how the capital improvement “will be marketed to increase hotel occupancy.”
Within their application, the EORD indicated a hotel occupancy of “1000+ ” and stated that the completion of the project “will attract additional state, regional, and national tournaments to the community.” The EORD further stated that the project would “give us a much larger footprint in the sports tourism industry and draw thousands of new visitors each year.”
The following statements were also made by the EORD:
Last year we partnered with West Monroe Baseball and the Convention and Visitors Bureau to co-host a Dixie Boys State Tournament and a Girls World Series Tournament. These events drew thousands of visitors, with the girl’s [sic] *384 tournament accounting for over 1,500 hotel nights during the tournament. The economic benefit for our community was tremendous.
[[Image here]]
The facility upgrades we are proposing would make the Ouachita Sports Complex the premier sports facility for our region. This premier facility will allow the East Ouachita Recreation District and the Convention and Visitors Bureau the opportunity to pursue large scale tournaments, thus making a huge economic impact on our community. These state-of-the-art facilities will also have a positive impact on the quality .of life for our local residents, as the complex has the ability to host a variety of sports events and activities throughout the year. Accordingly, within a few short years, the creation of the Ouachita Sports Complex will generate enough tourism dollars to more than offset the Convention and Visitor’s [sic] Bureau Investment. The economic impact of future tournaments will be substantial. A single large tournament will generate at least $500,000.00 for Northeast Louisiana.
The EORD requested the sum of $6,758,725.00,[7] but was awarded a $1,000,000.00 grant on July 25, 2016, “to Complete 8 full 200 ft. Fields.” 14The Town of Sterlington also applied for a capital improvement grant of $350,000.00, for a new sports complex, but was denied.[8]
On October 25, 2016, the Town of Ster-lington (“Sterlington”), along with Robert Holtzclaw, Lucia Holtzclaw and Jerod Cross[9] (“Plaintiffs”), as taxpayers and residents of Ouachita Parish and parents of youths who participated in sports, filed this suit against the EORD challenging the validity of the bonds and, alternatively, seeking declaratory judgment and injunc-tive relief. Plaintiffs alleged that, pursuant to “public pronouncements,” the EORD intended to invest the bond proceeds in construction at the Osterland location for “the growth [of] sports tourism and youth travel baseball and softball events” (“travel ball”) and “the economic benefits of bringing participants from outside of the District.” Plaintiffs contended that sports tourism and economic growth were outside the purpose of the recreational district and that the dedicated tax was not intended to fund sports tourism. Plaintiffs alleged that, insofar as the bond proposition attempted to change the dedicated purpose of the tax, it was invalid.[10]
Trial of this matter came before the court on an expedited basis on November 21 and 22, 2016, pursuant to La. Const. Art. 6, § 35, and La. R.S. 13:5125, et seq., pertaining to suits to determine the validity of governmental bonds.
| ^Evidence was presented on a variety of issues, including the usage of the facilities, the difference between “recreational ball” and “travel ball,” the 2015 tax renewal approval, the grant agreement with the *385 local tourist bureau, the improvement and expansion plans, the 2016 bond resolution, a similar grant situation involving the CVB and the University of Louisiana at Monroe (“ULM”), and the plaintiffs’ rationale for instituting this litigation. Testimony was given by six witnesses: Scott Bruscato, an employee of the CVB who coached both recreational and travel ball and had played at all three facilities; Alana Cooper, the president/CEO of the CVB; Lucia Holtzclaw, a plaintiff; Jerry Edmondson, the vice-chairman of the CVB Board and chairman of the personnel committee; Vern Breland, the mayor of Sterlington; and Gene Crain, the executive director of the EORD. Numerous exhibits were introduced into evidence.
After hearing all of the testimony and considering the documentary evidence, the trial court issued astute and extensive written reasons for judgment and a signed judgment, rejecting the plaintiffs’ claims. The trial court made numerous uncontested findings of fact, the most relevant of which are quoted below:
• EORD encompasses all of Wards 1 and 2 of Ouachita Parish and those parts of Ward 10 outside the City of Monroe. EORD owns and operates three recreational facilities—Swartz, Osterland, and Sterlington—and provides various programs at these facilities, such as baseball, softball, basketball, and fitness programs.
• Even though the District’s two Dixie Youth franchises for baseball and softball are based at Swartz and Sterling-ton, the current fields at Osterland are used for a “wee ball” league, regular league games, games and tournaments involving the two Dixie Youth franchises, other Dixie Youth tournaments, the local middle school baseball league, other “travel ball” tournaments, and practices for various EORD league teams. In fact, Mr. Gene Crain, EORD’s Executive Director, ^testified that baseball and/or softball activities take place at Oster-land on a daily basis in season. Aso, two of Petitioners’ witnesses acknowledged having attended baseball or softball activities at Osterland.
• “Travel ball” involves teams organized by parents, coaches, and others specifically to play in local, regional, and even national tournaments sponsored by various organizations and are not affiliated with a recreation district. In contrast to recreational league baseball and softball, travel ball teams are not open to all youth but are comprised of selected players. Travel ball is played year-round, and tournaments are typically held on weekends (i.e. Friday, Saturday, and Sunday).
• Conversely, recreational league baseball and softball are open to all and are operated by the recreation district. Recreation league baseball/softball season usually lasts about three months, and its games are normally played on Monday, Tuesday, Thursday, and Friday.
• On March 28, 2015, the voters residing within EORD’s geographic boundaries voted to renew the property tax millage that supports the District. The stated purpose for the tax was “constructing, improving, maintaining, operating and equipping the recreational facilities of the District.”
• Upon securing a ten-year renewal of the tax, EORD moved forward with plans for needed improvements of its baseball and softball facilities. The Board determined that the cost of the desired upgrades would limit it to renovating only one facility at a time and decided to begin with Osterland due to its central location and ready acces *386 sibility to all District residents. It would also cause the least disruption to game schedules during construction.
• In addition, EORD decided to pursue a grant from the Monroe-West Monroe Convention and Visitors Bureau (CVB) as an additional source of funding.
• The CVB had retained a consultant, the Huddle Up Group or HUG, to make recommendations regarding the CVB’s efforts to develop so-called sports tourism in Ouachita Parish. HUG identified the intramural baseball/softball facilities at the University of Louisiana at Monroe as the best facility for hosting youth baseball/softball tournaments and identified Oster-land as an excellent overflow site due to its proximity to ULM.
b* Thus, EORD’s grant application to the CVB used language and terminology found in the HUG study in order to make EORD’s application more attractive and enhance the chances of receiving a grant.
• The CVB awarded EORD a $1 million grant to be used for capital improvements at Osterland.
• As a condition of this funding, EORD will be required to make Osterland available to host eight to twelve tournaments per year. These tournaments would be played almost exclusively on weekends, usually after EORD’s league season ends, and would rarely conflict with recreational league activities, At all other times, the upgraded facilities would be available for local leagues.
• By rule at least one EORD “host team” will play in every Dixie Youth tournament hosted at Osterland. It is also possible other EORD teams will qualify for a spot in such Dixie Youth tournaments. Additionally, because so many EORD players and coaches also participate in non-Dixie “travel ball” on weekends, it is likely that one or more teams with players and/or coaches from EORD will play in non-Dixie “travel ball” tournaments hosted at Osterland. It would be rare for a tournament played at Osterland not to include players, coaches, or spectators from EORD.
• EORD has not imposed a residency requirement for participation in the baseball and softball tournaments held at Osterland or its other facilities in the past, and it does not impose a residency requirement for participation in other activities at its recreation centers.
In its written opinion, the court determined that the “clear and unambiguous language” of the EORD’s tax proposition permits the EORD to construct and improve its recreational facilities and that the proposed improvements did not exceed what was authorized by the tax. The court further stated:
With these rules in mind, the Court finds La. R.S. 33:4563 in no way limits EORD to those actions which would only benefit residents of the District. Rather, EORD is directed to encourage recreation and promote the health and [well-being] of youths—not just those who happen to reside within EORD’s geographic boundaries who may participate in EORD supervised activities. The proposed improvements to the facilities at Osterland are clearly within EORD’s statutory ^authority. The Court notes there is no language in the statute which limits the benefits of EORD’s facilities to only youths living in the District. All agreed the improvements will benefit the youth living in the District as well as those beyond its boundaries. Any addi *387 tional benefits in terms of sports tourism and economic development that may result are lagniappe. EORD’s actions are not ultra vires.
This appeal followed.

Law

Once citizens vote for a tax dedicated to one purpose, the tax cannot be used for a purpose other than that approved by the citizens. Any alteration of a prior dedication should also be by vote of the people. The act of presenting a proposition to the voters and the voters’ acceptance of same constitutes a covenant which should be respected and upheld. City of New Orleans v. Louisiana Assessors’ Ret. & Relief Fundi 2005-2548 (La. 10/1/07), 986 So.2d 1; Denham, Springs Econ. Dev. Dist. v. All Taxpayers, Property Owners, 2004-1674 (La. 2/4/05), 894 So.2d 325. The Louisiana Constitution (Art. 6, § 26) respects and upholds this most basic proposition and prohibits the diversion of taxes dedicated to a specific purpose to purposes other than those specified. City of New Orleans v. Louisiana Assessors’ Ret. & Relief Fund, supra.
La. Const. Art. 6, § 26 (B) provides for parish ad valorem taxes in relevant part as follows:
(B) Millage Increase Not for General Purposes. When the millage increase is for other than general purposes, the proposition shall state the specific purpose or purposes for which the tax is to be levied and the length of time the tax is to remain in effect. All proceeds of the tax shall be used solely for the purpose or purposes set forth in the proposition.
The Louisiana Supreme Court has consistently interpreted this article of the constitution to prohibit the use of dedicated and special taxes for | ^purposes other than those for which they were levied. City of New Orleans v. Louisiana Assessors’ Ret. & Relief Fund, supra. The starting point in the interpretation of constitutional provisions is the language of the constitution itself. East Baton Rouge Parish Sch. Bd. v. Foster, 2002-2799 (La. 6/6/03), 851 So.2d 985; City of New Roads v. Pointe Coupee Parish Police Jury, 2014-0179 (La.App. 1 Cir. 4/24/15), 167 So.3d 1038, writ denied, 2015-1023 (La. 9/11/15), 176 So.3d 1041.
It is a familiar principle that laws authorizing taxation or, in other words, authorizing a debt to be created against the taxpayer, or his property to be taken, without his consent, are in derogation of common rights, and therefore are to be strictly construed. Hemler v. Richland Parish Sch. Bd., 142 La. 133, 76 So. 585 (1917); Police Jury of Parish of Acadia v. All Taxpayers, 95-145 (La.App, 3 Cir. 3/29/95), 653 So.2d 94, unit denied, 95-1069 (La. 6/30/95), 657 So.2d 1032.
La. R.S. 18:1284 addresses the calling of an election for a special tax as follows:
A. The election shall be ordered by a resolution of the governing authority of the political subdivision which shall state the purpose for which it is called.
⅜ ⅜ ⅜
C. If the purpose of the election is to authorize the levy or increase of a special tax, the resolution and the proposition submitted to the voters shall state the rate, object, and purpose for which the tax is to be levied or increased; the estimated amount reasonably expected to be collected from the levy or increase of the tax for one entire year at the time it is proposed; and, if it is to be limited as to duration, the number of years it is to run. If the purpose of the election is to authorize an increase of a tax, the resolution and the proposition shall also state the rate increase. The contents of any proposition or resolution relative to the issuance of general obligation bonds *388 shall be as provided in Subsection B of this Section.
|inLa. R.S. 39:704 discusses the use of proceeds of a special tax as follows:
The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. The records of the taxing authority shall clearly reflect the objects and purposes for which the proceeds of the tax are used.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; La. R.S. 1:4; Denham Springs Econ. Dev. Dist., supra.

Discussion

Plaintiffs raise two issues in brief. They first argue that the trial court erred in finding that the tax dedication purpose for the “constructing, improving, maintaining, operating and equipping the recreational facilities of the District” permitted the EORD to expend the tax proceeds for sports tourism, including travel ball. Plaintiffs also argue that the tax proposition did not authorize the EORD to expend tax revenue to provide services to individuals outside of the district.
After our comprehensive review of the evidence, we discern no error in the trial court’s well-reasoned ruling. It is undisputed that the designated purpose for both the ad valorem tax and bond resolution was the constructing, improving, maintaining, operating and equipping of the recreational facilities of the EORD. The evidence also established that the EORD will use the bond proceeds for the construction and improvement of the Ost-erland facility. Such improvements will benefit the residents of the district, as well as expand the events the facility already hosts, including both recreational and travel ball. The testimony established that the travel lnball games will not interfere with the recreational ball events or the EORD’s other use of the facilities. Contrary to plaintiffs’ argument, travel ball, as a form of baseball and softball, is still recreational. And like all forms of recreation, travel ball and the tournaments it creates bring in increased numbers of people to the locations where the events take place. The testimony also established that better facilities bring in more people. Thus, the natural progression of expanding and improving the facilities will be increased activity and the number of people those events bring. The utilization of the facilities will be maximized by all of these events.
The evidence shows that for travel ball, and any other form of baseball and softball, tourism is an ancillary benefit or “lagniappe,” as aptly noted by the trial court. This reality, however, does not change the foundational characteristic of travel ball as a recreational activity. The fact that the EORD maximized the advantages available to it regarding the tourism aspect of travel ball and had the foresight to apply for tourism funds should not preclude it from utilizing the tax proceeds for the improvement of the recreational facilities in keeping with their stated purpose. A contrary holding, taken to its logical extreme, would prevent the tax proceeds from being used for any purpose because, as the testimony established, any improvements in the facilities, even for the limited purpose of local events, such as the Dixie Youth Tournament, would foster tourism.
Likewise, because the Osteiiand facility is a public use facility and the tax designation in no way limits the use of the funds to prevent such public use, we find no merit to plaintiffs’ second argument that the tax dedication limits use of these facilities to only members of the EORD. *389 The public nature of the facilities dictates otherwise. The testimony established that 112recreational events like Dixie Youth and World Series Tournaments are already being hosted at the Osterland location. These tournaments, like those in travel ball, bring in large numbers of people from outside the district. To prevent such use of these facilities by the general public, inside and outside of the district, would be inconsistent with the already-sanctioned use of the facilities, violate the public use nature of the facilities, and inject into the tax dedication a limitation which was not included within the designation.
For these reasons, we find no merit to plaintiffs’ contentions and agree with the well-reasoned opinion of the trial court. We affirm the judgment rendered below. Costs of this appeal are assessed to plaintiffs in the amount of $324.50.
AFFIRMED.

. Although an alderman of Sterlington, Holtzclaw appears in her individual capacity,

. The OPPJ was authorized to create recreational districts within its parish under La. R.S. 33:4562. The object and purposes of the recreation districts are set forth in La. R.S. 33:4563.

. The ballot indicated that this tax was "a renewal of an existing tax presently authorized through 2015,” that was reasonably expected to generate $1,554,144.00 in its first year.

. These bonds were issued in accordance with La. R.S. 39:1430, which authorizes public entities to issue revenue bonds for any authorized purpose.

. La. Const. Art. 6, § 35 requires at least one publication of the resolution authorizing the issuance of bonds in the official journal of the political subdivision or, if there is none, in a newspaper having general circulation therein. Any person in interest may contest the legality of the resolution for 30 days after the date of the publication.

.The CVB hired Huddle Up Group ("HUG”) to make recommendations regarding the development of sports tourism in Ouachita Parish. To that end, on November 17, 2015, HUG presented a "Sports Tourism Strategic Planning Project Executive Summary.”

. The EORD also requested the sum of $7,200,000.00 for the Swartz Recreation Center and established that it had $3,600,000.00 on hand dedicated to the project.

. Sterlington was planning to build a sports complex and had sufficient funds to match the $350,000.00 requested.

. Upon their failure to appear in prosecuting the case, Robert Holtzclaw and Jerod Cross were involuntarily dismissed from the suit. The EORD also withdrew exceptions of no right of action and no cause of action prior to trial.

.Certain issues raised by Plaintiffs—equal protection, whether the EORD exceeded the scope of its statutory authority, and the EORD's alleged failure to properly publish the tax election results—are not before this court on appeal.